## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN WATSON, DANIEL SAMARGHITAN, ANNMARIE GREENE f/k/a ANNMARIE MOHAMMED, JOSE ESPINAL, LYMELL JACKSON individually, and on behalf of all others similarly situated, | Case Nos.:  1:20-cv-04572 |
| | 1:21-cv-01588 |
| Plaintiffs, | |
| | <u>AMENDED CONSOLIDATED</u> <u>COMPLAINT</u> |
| v. | |
| MANHATTAN LUXURY AUTOMOBILES, INC. d/b/a LEXUS OF MANHATTAN, | |
| Defendant. | |

Plaintiffs Brian Watson, Daniel Samarghitan, AnnMarie Greene, Jose Espinal, Lymell Jackson bring this class action complaint on behalf of themselves and on behalf of all others similarly situated against Defendant MANHATTAN LUXURY AUTOMOBILES, INC. d/b/a LEXUS OF MANHATTAN ("Lexus") to stop Defendant's practice of sending unsolicited text messages to telephones of consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), and to obtain redress for all persons injured by its conduct. Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.     Lexus of Manhattan is a business the principal purpose of which is to engage in car sales and maintenance.

2.     The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones whose phone numbers are

obtained without prior express consent of call recipients, and texts made to those on the Do Not Call list.

3.      The actions of Lexus of Manhattan violated the statutory rights of both Plaintiffs and thousands of other class members.

4.      Plaintiffs seek an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012)

6.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant's corporate headquarters is located in Manhattan, and both Plaintiffs reside in the Southern District.

## PARTIES

7.      Plaintiff Brian Watson is a resident of Bronx, New York, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

8.      Plaintiff Daniel Samarghitan is a resident of Woodside, New York, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

9.      Plaintiff AnnMarie Greene, formerly known as AnnMarie Mohammed is a resident of Manhattan, New York, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

10.     Plaintiff Jose Espinal is a resident of Staten Island, New York, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

11.     Plaintiff Lymell Jackson is a resident of Bronx, New York, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

12.     Defendant Lexus of Manhattan, is a Corporation, with its principal place of business at 662 Eleventh Ave. New York, NY 10036 and is a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA")
## 47 U.S.C. §§ 227 *et seq.*

13.     Alarmed by the incessant unsolicited advertising calls, in 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 to cure America of the "scourge of modern civilization." 137 Cong. Rec. 30,821 (1991).

14.     The TCPA codified numerous mechanisms with which to stop the solicitations including a provision prohibiting the use of an automatic telephone dialing system to call American consumers, the obligation upon the caller to adhere to the national Do-Not-Call list, and to create an internal Do-Not-Call list.

15.     Perhaps the most heavily litigated issue concerning the TCPA revolves around the exact definition of the phrase "automatic telephone dialing system."

16.     The Supreme Court in *Facebook, Inc. v. Duguid*, 2021 U.S. LEXIS 1742 (April 1, 2021) has held that "[t]o qualify as an 'automatic telephone dialing system' under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator."

## FACTUAL ALLEGATIONS

17.     This case arises out of solicitation text messages sent to Honda of Manhattan customers by Lexus of Manhattan.

18.     Honda of Manhattan and Lexus of Manhattan are two separate corporate entities.

19.     Honda of Manhattan and Lexus of Manhattan have no business relationship.

20.     Honda of Manhattan closed in January 2017. After Honda of Manhattan closed, it provided the personal information of its customers, including their names and cell phone numbers, to Lexus of Manhattan via a customer list.

21.     Lexus of Manhattan took this opportunity to engage in solicitation campaign directed towards all Honda of Manhattan customers to invite them to have their Honda vehicles serviced at Lexus of Manhattan. Lexus went about this solicitation campaign by engaging in marketing by text message.

22.     Lexus began its texting campaign on or about February 2017, and the campaign continued throughout the year of 2017.

23.     The text marketing campaign developed a number of uniform text messages including messages related to the maintenance of vehicles, vehicle inspection, and other services.

24.     On information and belief, the Honda of Manhattan customer list contained thousands of phone numbers. Lexus of Manhattan sought to solicit each of the former Honda customers.

25.     To engage in its mass text solicitation, Lexus engaged and purchased a texting platform license from a company known as Zipwhip.

26.     The Zipwhip platform enabled Lexus to utilize a function known as group texting in order to text many people at one time, with a single click. The group text function of Zipwhip allows the user to input lists of numbers, or to enter numbers directly into the Zipwhip texting platform in order to create a group list. The user can set a group name for any list inputted into Zipwhip. Once a group has been created within Zipwhip's platform, the user can than initiate text messages to each phone number listed within the group, simultaneously, with a single click. In other words, the Zipwhip platform allows the user to store numbers, and then subsequently dial/message those stored numbers simultaneously.

27.     Lexus was aware that this system was an automatic telephone dialing system given the fact that it could dial many numbers at once, and specifically sought out such a product given the number of Honda of Manhattan customers it sought to solicit.

28.     Lexus used the group texting function to text over 200 consumers at the same time.

29.     The Zipwhip system stored the Honda of Manhattan customer numbers through the use of a sequential number generator.

30.     The Zipwhip system than dialed the Honda of Manhattan customer numbers through the use of a sequential number generator.

31.     On or about July 2016, Mr. Watson leased a vehicle from Honda of Manhattan.

32.     At no time did Mr. Watson have any business relationship with Lexus of Manhattan.

33.     On July 7, 2017, Mr. Watson received an unsolicited text message, to his cellular phone ending in 0937, from Lexus of Manhattan, via the Zipwhip group texting platform. The text was of a uniform nature and was a text designed to solicit Honda of Manhattan customers for various services offered by Lexus of Manhattan.

34.     Mr. Watson's cellular phone ending in 0937 has been on the National Do Not Call Registry since August 20, 2014.

35.     On or about June 2016, Mr. Samarghitan leased a vehicle from Honda of Manhattan.

36.     At no time did Mr. Samarghitan have any business relationship with Lexus of Manhattan.

37.     On June 16, 2017, Mr. Samarghitan received an unsolicited text message, to his cellular phone ending in 1785, from Lexus of Manhattan, via the Zipwhip group texting platform. The text was of a uniform nature and was a text designed to solicit Honda of Manhattan customers for various services offered by Lexus of Manhattan.

38.     On November 1, 2017, Mr. Samarghitan received the form solicitation message again.

39.     Mr. Samarghitan's cellular phone ending in 1785 has been registered with the National Do Not Call Registry since January 13, 2006.

40.     After Mr. Samarghitan received the first message, Mr. Samarghitan specifically instructed Lexus that it should not communicate with him, and such communications were illegal. Mr. Samarghitan specifically asked that his number be removed from Lexus of Manhattan's calling list.

41.     Lexus of Manhattan continued to text Mr. Samarghitan, however, because Lexus of Manhattan, at all relevant times, did not maintain an internal do not call list before sending out text message solicitations. Specifically, Lexus did not maintain a written policy for keeping an internal call list, did not train personnel engaged in telemarketing how to handle do not call requests, and did not have a policy or procedure in place to record when an individual requested to be put an on entity's do not call list.

42.     At some time in 2015, Ms. Greene leased a car from Honda of Manhattan.

43.     At no time did Ms. Greene have any business relationship with Lexus of Manhattan.

44.     In February, June, and July 2017, Ms. Greene received unsolicited text messages, to her cellular phone ending in 7786, from Lexus of Manhattan, via the Zipwhip group texting platform. The texts were of a uniform nature and were texts designed to solicit Honda of Manhattan customers for various services offered by Lexus of Manhattan.

45.     Ms. Greene's cellular phone ending in 7786 has been registered with the National Do Not Call Registry since December 10, 2004.

46.      At some time in 2015, Mr. Espinal leased a car from Honda of Manhattan.

47.     At no time did Mr. Espinal have any business relationship with Lexus of Manhattan.

48.     On June 21, 2017, Mr. Espinal received an unsolicited text message, to her cellular phone

ending in 7036, from Lexus of Manhattan, via the Zipwhip group texting platform. The text was

of a uniform nature and was a text designed to solicit Honda of Manhattan customers for various

services offered by Lexus of Manhattan.

49.     On November 9, 2017, Mr. Espinal received the form solicitation message again.

50.     Mr. Espinal's cellular phone ending in 7036 has been registered with the National Do Not

Call Registry since January 20, 2007.

51.     As part of the same solicitation campaign, Lexus of Manhattan sent two text messages to

Mr. Jackson in February 2017 to his cellular phone ending in 7005.

52.     At no time did Mr. Jackson have any business relationship with Lexus of Manhattan.

53.     None of the text messaging engaged in by Defendant was for the purpose of emergency

services.

54.     Defendant did not have express written consent for any of the text message herein

complained of.

## **CLASS ACTION ALLEGATIONS**

55.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and

23(b)(3) individually, and on behalf of all others similarly situated ("the Class"). Plaintiffs seek

to represent the following classes:

| | |
|---|---|
| ATDS Class: | All Honda of Manhattan customers within the United States that were sent any text messages from Lexus of Manhattan, using the Zipwhip texting platform, within four years of the filing of this action. |
| Do Not Call Class: | All Honda of Manhattan customers within the United States that were sent any text messages from Lexus of Manhattan, using the Zipwhip texting platform, whom were registered on the National |

|                      | Do Not Call List more than thirty-two days before receiving messages from Lexus, within four years of the filing of this action. |
|----------------------|---|
| Internal Call List:  | All Honda of Manhattan customers within the United States that were sent any text messages from Lexus of Manhattan, using the Zipwhip texting platform, while Lexus failed to institute procedures to maintain a list of persons who requested not to receive telemarketing calls, within four years of the filing of this action. |

56.     Defendant and its employees or agents are excluded from the Class.

57.     The class consists of thousands of consumers, the vast majority of which reside in New York.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

58.     This suit seeks only statutory damages on behalf of the Class. Plaintiffs reserve their right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

59.     Joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendant's records.

60.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a.  Whether the equipment Defendant, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

b.  Whether Defendant, or its agents, systematically sent text messages to persons who did not previously provide Defendant with their prior express consent to receive such text messages;

c.  Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

d.  Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

61.    As persons that received at least one unsolicited text message to their cell phones, as former customers of Honda of Manhattan, whom never provided consent for Lexus of Manhattan to text them, Plaintiffs are asserting claims that are typical of the Class.

62.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interest antagonistic to any member of the Class.

63.    Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

64.    Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

65.    A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Class-wide damages are essential to induce Defendant's to comply with federal law.  The interest of Class members in individually

controlling the prosecution of separate claims against Defendant's is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT 1

### NEGLIGENT AND WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. § 227(B) *ET SEQ.*

66.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.     Each of the form messages described in Paragraph 20 were sent out using the Zipwhip group texting platform.

68.     By utilizing this platform, Lexus of Manhattan was able to store lists of numbers consisting of Honda of Manhattan customers and then simultaneously dial those numbers in groups.

69.     By using such equipment, Defendant was able to effectively send thousands of text messages within an extremely short period of time without human intervention.

70.    These messages were sent without the prior express consent of the Plaintiffs or other members of the Class to receive such text messages.

71.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

72.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 2

### NEGLIGENT AND WILLFUL VIOLATION OF THE TCPA

### 47 U.S.C. § 227(C)(3)(F)

73.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.    The telephone numbers of Plaintiffs that received Defendant's solicitations were each used by Plaintiffs as residential telephones.

75.    The text messages sent by Defendant to all Plaintiffs were made despite the fact that all Plaintiffs were registered on the National Do Not Call Database.

76.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

77.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

## COUNT 3

## NEGLIGENT AND WILLFUL VIOLATION OF THE TCPA
### 47 CFR 64.1200(C)

78.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

79.     The telephone numbers of Plaintiffs that received Defendant's solicitations were each used by Plaintiffs as residential telephones.

80.     The text messages sent by Defendant to all Plaintiffs were made despite the fact that all Plaintiffs were registered on the National Do Not Call Database.

81.     As a result of Defendant's negligent violations of 47 CFR 64.1200(c), Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

82.     As a result of Defendant's knowing and/or willful violations of 47 CFR 64.1200(c) *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

## COUNT 4
### NEGLIGENT AND WILLFUL VIOLATION OF THE TCPA
### 47 CFR 64.1200(D)

83.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

84.     Defendant initiated text messages to thousands of Honda of Manhattan customers throughout 2017.

85.     During this time period, Defendant had not instituted procedures for maintaining a list of persons who requested not to receive telemarketing calls from Defendant.

86.     Each of the calls made to Honda of Manhattan customers therefore violate 47 CFR 64.1200(D).

87.     As a result of Defendant's negligent violations of 47 CFR 64.1200(D), Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

88.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(C)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Brian Watson, Daniel Samarghitan, AnnMarie Greene, Jose Espinal, and Lymell Jackson respectfully requests that this Court do the following for their benefit:

1. Enter an Order declaring Defendant's actions, as described above, in violation of the Telephone Consumer Protection Act;

2. Appoint Plaintiffs as the Representatives for the Classes, and appoint Plaintiffs' Counsel as Lead Counsel for the Classes;

3. Enter judgment against the Defendant for statutory and treble damages;

4. Award costs and reasonable attorneys' fees; and,

5. Grant such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  May 20, 2021

/s/ *Daniel Zemel*

Daniel Zemel, Esq. (DZ9899)
Zemel Law LLC
660 Broadway
Patterson, New Jersey 07514
T:862-227-3106
dz@zemellawllc.com

***Attorneys for Plaintiffs and the Proposed Class***