UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRIAN WATSON, DANIEL SAMARGHITAN, ANNMARIE GREENE f/k/a ANNMARIE MOHAMMED, JOSE ESPINAL, LYMELL JACKSON, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | Case No.:  1:20-cv-04572-LGS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| LEXUS OF MANHATTAN, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
DAUBERT MOTION TO STRIKE OR EXCLUDE CERTAIN EXPERT OPINIONS OF
DEFENDANT'S EXPERT KEN SPONSLER**

Respectfully Submitted,

/s/ Daniel Zemel, Esq.
Daniel Zemel, Esq.
Elizabeth Apostola, Esq.
**Zemel Law LLC**
660 Broadway
Paterson, New Jersey 07514
(P) (862) 227-3106
dz@zemellawllc.com
ea@zemellawllc.com
Attorneys for Plaintiffs and the
Proposed Class

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................ 1

II.   ARGUMENT................................................................................................ 5

   A.   Sponsler's ATDS Opinions Should Be Excluded Pursuant to FRE 702 ............................ 5

      1.   Qualification: Sponsler is not qualified to opine on the subject of ATDS...................... 9

      2.   Reliability: Sponsler's opinions are not based on sufficient facts or data, his testimony

      is not the product of reliable methods and he has not reliably applied these methods to the

      facts of the case. ...................................................................................... 13

      3.   Relevance: Sponsler's specialized knowledge will not help the jury to understand the

      evidence or to determine a fact in issue .............................................................. 17

   B.   Mr. Sponsler's Testimony Should Be Excluded Pursuant to Federal Rule of Civil

   Procedure 26 as his rebuttal evidence introduces extensive improper legal opinions. ............. 19

III.   CONCLUSION....................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

Allison v. McGhan Medical Corp., 184 F.3d 1300 (11th Cir. 1999)............................................. 14

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002)................................... 14

Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705 (2d Cir. 1989)................................ 8

Bah v. Nordson Corp., 2005 U.S. Dist. LEXIS 15683, 2005 WL 1813023 (S.D.N.Y. 2005) ..... 12

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195 (3d Cir. 2006). ............................................... 20

Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325 (3d Cir. 2001)................................. 8

Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987) ................... 6

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d 469

    (1993). ........................................................................................ 5, 6, 8, 13, 14, 15, 17

DiBella v. Hopkins, 403 F.3d 102 (2d Cir. 2005)........................................................................... 18

Facebook, Inc. v. Duguid, 141 S. Ct. 1163 (2021) .................................................................. 4, 20

Fed. Deposit Ins. Corp. v. Suna Assocs., Inc., 80 F.3d 681 (2d Cir.1996)................................... 13

Gen Elec. Co. v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)....................... 15

General Electric Co. v. Joiner, 522 U.S. 136 (1997) ....................................................................... 6

Home Design Servs. v. Hibiscus Homes of Fla., Inc., 2005 U.S. Dist. LEXIS 41745 (M.D. Fla

    2005) .................................................................................................................... 15

Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329 (11th Cir.2003) ........................................ 15

ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc., 198 F.Supp. 2d 598 (E.D. Pa. 2002) ................ 7

In re Ocean Bank, 481 F. Supp. 2d 892 (N.D. Ill. 2007) ............................................................... 20

Knapper v. Cox Communications, Inc., 329 F.R.D. 238 (D. Az. 2019)........................................ 17

Koppell v. New York State Bd. of Elections, 97 F. Supp. 2d 477 (S.D.N.Y. 2000)...................... 6

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) . 6, 7, 8, 14

Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001) ..................................................... 10

McClain v. Metabolife International, Inc., 401 F.3d 1233 (11th Cir.2005). ................................ 15

McDowell v. Brown, 392 F.3d 1283 (11th Cir.2004) ................................................ 15

Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005) ...................................... 7, 8, 9, 10, 18

Nosal v. Granite Park LLC, 269 F.R.D. 284 (S.D.N.Y. 2010) ...................................... 7

Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000). ................................................ 8

Padillas v. Stork-Gamco, Inc., 186 F.3d 412 (3d Cir. 1999) ........................................ 7

Patrick v. Moorman, 536 F. App'x 255 (3d Cir. 2013) ................................................ 20

Pineda v. Ford Motor Co., 520 F.3d 237 (3d Cir. 2008). ............................................ 6

Quiet Tech. DC-8, Inc. v. Hurel-Dubois UJ Ltd., 326 F.3d 1333 (11th Cir 2003)................. 11, 14

Riegel v. Medtronic, Inc., 451 F.3d 104 (2d Cir. 2006) ............................................. 12

Royal Park Invs. v. U.S. Bank Nat'l Ass'n, 324 F. Supp. 3d 387 (S.D.N.Y. 2018)...................... 9

Salem v. United States Lines Co., 370 U.S. 31, 8 L. Ed. 2d 313, 82 S. Ct. 1119 (1962)............... 8

Scalia v. E. Penn Mfg. Co., 2020 U.S. Dist. LEXIS 164234 (E.D. Pa. 2020)............................ 20

Schneider v. Fried, 320 F.3d 396 (3d Cir. 2003) .................................................... 7

Stagl v. Delta Air Lines,117 F.3d 76 (2d Cir. 1997) ................................................ 10

UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 8255 (3d Cir. 2020)... 6

United States Smelting Co. v. Parry, 166 F. 407 (8th Cir. 1909) ................................... 8

United States v. Castillo, 924 F.2d 1227 (2d Cir. 1991)............................................. 17

United States v. Diallo, 40 F.3d 32 (2d Cir. 1994). ................................................ 10

United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004)............................................ 10, 14, 17

United States v. Mulder, 273 F.3d 91 (2d Cir. 2001) ................................................................ 17

United States v. Mulder, 273 F.3d 91 (2d Cir. 2001). ................................................................ 8

United States v. Romano, 794 F.3d 317 (2d Cir. 2015)................................................................ 7

United States v. Rouco, 765 F.2d 983 (11th Cir. 1985)................................................................ 17

Vale v. United States, 2015 U.S. Dist. LEXIS 134384, 2015 WL 5773902 (E.D.N.Y. 2015) .... 10

Water Pollution Control Auth. of Norwalk v. Flowserve US Inc., 2018 U.S. Dist. LEXIS 52168

    (D. Conn. 2018). ................................................................................................................. 15

West v. Cal. Servs. Bureau, 323 F.R.D. 295 (N. D. Cal 2017)................................................................ 16

Pursuant to Fed. R. of Civ. Pro. 26, Fed. R. of Evid. 702 and 403, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 526 U.S. 579 (1993), Plaintiffs BRIAN WATSON, DANIEL SAMARGHITAN, ANNMARIE GREENE f/k/a ANNMARIE MOHAMMED, JOSE ESPINAL, and LYMELL JACKSON ("Plaintiffs") move to strike or exclude the testimony of Defendant LEXUS OF MANHATTAN's expert, Ken Sponsler as he does not meet the *Daubert* standards for qualification, reliability and helpfulness on the issue of the Automatic Telephone Dialing System ("ATDS") and his rebuttal report contains extensive improper legal opinions on the issue.

## I.    **PRELIMINARY STATEMENT**

This case arises from an alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiffs Watson, Samarghitan, Greene, Espinal and Jackson allege that Lexus of Manhattan violated the Telephone Consumer Protection Act and seek to certify classes of individuals for violations of the provisions pertaining to ATDS, Do Not Call and Internal Call list regulations.

Defendant Lexus of Manhattan has identified Mr. Ken Sponsler as an expert in this matter. On December 17, 2020, Mr. Sponsler submitted his Expert Report. Exhibit A, ("First Report"). Mr. Sponsler is the senior vice president of a "professional services firm specializing in consumer contact compliance consulting and audit services." Exhibit A, First Report, pg. 1. He explains that he was retained in part to "opine if the equipment in question possesses the capacities claimed by the Plaintiffs and if it meets the statutory definition of an Automatic Telephone Dialing System ("ATDS") under the Telephone Consumer Protection Act ("TCPA")." *Id.,* pg. 1. He was also asked to opine whether "one or more class(es) of consumers could be ascertained based on a text from a

cellular telephone in general and as outlined in the relevant sections of Plaintiffs' expert's report, Anya Verkhovskaya." *Id.*

Per his expert report, Mr. Sponsler's background consists of assessing and auditing call centers and assisting in to implement compliant express and written express consent strategies, as well as compliance with disclosure, wireless, Do Not Call, record keeping and a host of other regulatory requirements. These services include call data audits in support of compliance monitoring and enforcement efforts." *Id.,* pg. 3. Mr. Sponsler appears to have some experience with Do Not Call lists both externally and internally, but his expertise does not extend to opining upon the ATDS system utilized by Lexus and developed by ZipWhip. Despite more than four pages of "Qualifications," Mr. Sponsler fails to provide any basis for his qualifications to opine on the subject of the existence/application of an ATDS or class identification. Exhibit A, pages 2-7.

Only one paragraph even addresses ADTS, but only in a vague, unsubstantiated way, stating:

> I have provided expert reports in several TCPA-related matters. I have personally analyzed dozens of contact center and service provider telephone dialing systems as well as text delivery platforms in order to provide opinions as to whether or not they meet the definition of an ATDS under the TCPA. I am familiar with the operational aspects of these systems including specific implementation parameters.

First Report, ¶6.

Mr. Sponsler's first Opinion addresses the ATDS issue and states: "Plaintiffs have not provided any evidence that the Zipwhip platform possesses the capacity a) "to store or produce telephone numbers to be called, using a random or sequential number generator, and b) to dial such numbers." Exhibit A, page 2. Plaintiff seeks to have testimony regarding this opinion excluded based on the failure to properly support these opinions as necessary expert opinion. Mr. Sponsler provides a basic description of his use of a Zipwhip test platform in December 2019, prior to the

2

filing of Plaintiffs' Complaint in this matter in June 2020 [ECF 1] and opines that generally based on *what was explained to him*, he did not believe that it had the capacity to be an ATDS.

There is no indication that he worked with Zipwhip or a similar company. His opinions are based only on his alleged usage of a test account in the Zipwhip portal back in 2019, and review of the deposition testimony of James Lapic, the Zipwhip representative. Sponsler provides a "Summary of the Zipwhip Economy V1.0 Package," including significant opinions regarding its functionality, but providing no indication as to how he arrived at these conclusions. He repeatedly references the deposition testimony of Mr. Lapic, which was taken in another case, prior to this case being filed, rather than providing opinions based on his own expertise.[1] Without proper qualifications, reliability or relevance, Mr. Sponsler's opinions on the ATDS at issue are simply not expert opinions and will not assist the jury in any further understanding of the issues.

In addition, Mr. Sponsler opines that "The Available SMS/Text Records In This Case Do Not Indicate Whether Intended Recipients Received the Message" and "Plaintiff's expert assertions regarding the ability to reliably and accurately identify names and current addresses of class members through objective or administratively feasible means for the proposed classes are unsupported and speculative." Exhibit A, pg. 53-54. In regards to Sponsler's second opinion, he states only that he disagrees that a class can be identified based on Mr. Lapic's Declaration and the general knowledge that in his opinion there is no way to confirm who received a text message. This is not something that requires expert knowledge, nor does he rely on any methodology to explain his position. As such this opinion is irrelevant and should be stricken. Sponsler goes further to state that he also believes that it is not feasible to identify the names and addresses of the

---

[1] *See* paragraphs 89-91, 93-94, 96 of Exhibit A, referencing Deposition of James Lapic, Zipwhip CTO and Corporate Designee that was conducted on December 12, 2019 in *Schleifer v. Lexus of Manhattan et al.*, Case No. 1:17-cv-08789 (and his Declaration in this case, executed September 15, 2020).

proposed class members because in his opinion subscriber reverse look-up services are not reliable and there are a variety of types of services which make determination of ownership difficult. Despite these general claims of class identification issues, he has no experience in the arena of class identification and provides no concrete methodology as to why class identification would be insufficient in this matter, when class identification has been achieved in other cases.

On August 11, 2021, Ken Sponsler issued an expert rebuttal report in support of Defendant which incorporated by reference his original report. His opinions in regards to the ATDS issue in the rebuttal report were slightly changed with "Opinion One" stating: "Plaintiffs have not provided any evidence that supports their assertions that text messages were sent using an "automatic telephone dialing system" by or on behalf of Lexus of Manhattan. Plaintiffs' claims are unsupported and speculative." Exhibit B, Rebuttal Expert Report ("Second Report") dated August 11, 2021. In this report, while addressing the opinions of Plaintiff's expert, Mr. Snyder in this case, Mr. Sponsler goes even further to base his opinions regarding the ATDS on significant discussions and interpretations of the recent Supreme Court opinion in *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021), despite disclaiming that his opinions are not legal opinions and he is not a lawyer. *See* Exhibit B, Second Report, ¶ 13-17, 46, 48. Again, while limiting his alleged knowledge of the matter, he opines that the holdings of the SCOTUS *Facebook* Opinion have been misinterpreted and misconstrued. It is improper for Mr. Sponsler to opine on legal determinations as an expert witness regarding what constitutes an ATDS as such opinions do not fall within the parameters of his expert testimony and should be stricken. *See* Exhibit B, ¶55-59, 61, 62.

Mr. Sponsler issued a third supplemental and rebuttal expert report on December 7, 2021. Exhibit C, *Supplemental and Rebuttal Expert Report* dated December 7, 2021 ("Third Report"). This report addressed the opinions of Plaintiff's second expert witness Anya Verkhovskaya. *See*

4

Exhibit C, Third Report, ¶3. In this report, despite his testimony confirming he had *no* experience in identifying class members in a class action lawsuit,[2] as opposed to the voluminous experience of Plaintiff's expert, he claims past work experiences "have led to my deep understanding of the difficulties involved in reliably identifying class members through third party compiled data providers." Exhibit C, ¶8. Mr. Sponsler's experience in management does not provide him sufficient qualifications to provide a reliable expert opinion on the best way of identifying class members in this matter and these opinions are outside the scope of his expertise. As such, these opinions should also be limited or stricken so as to not confuse or mislead the jury.

Plaintiff now respectfully asks the Court to exclude Mr. Sponsler's opinions on the issue of the ATDS, and the determination of class numbers pursuant to Fed. R. Ev. 704 as he does not have the relevant qualifications or expertise to provide such opinions, as his opinions will not assist the trier of fact. Further, his opinions in his Second Report (Exhibit B) which provide extensive improper legal opinions without sufficient expertise should likewise be stricken.

II.   <u>**ARGUMENT**</u>

### A. Sponsler's ATDS Opinions Should Be Excluded Pursuant to FRE 702

Plaintiffs seek to exclude the expert testimony of Mr. Sponsler on the issue of the Zipwhip platform and whether or not it should be classified as an ATDS on the grounds he is not qualified to opine on this issue and his opinions will not assist the trier of fact. As such, these opinions do not meet the standards set out in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993). In *Daubert*, the U.S. Supreme Court expounded on the requirements of Rule 702, establishing that the court must function as a "'gatekeeper'" to ensure that any and all scientific testimony or evidence admitted is

---

[2] Exhibit D, Deposition of Ken Sponsler taken on August 24, 2021 ("Sponsler Depo"), 30:6-15.

not only relevant, but reliable. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). A "trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 8255, 832 (3d Cir. 2020). "The text of Rule 702 contains no exception to these requirements, so if they are not satisfied, an expert cannot testify before the 'trier of fact.'" *Id.*

*Daubert* was followed by *General Electric Co. v. Joiner,* which held that a district court may exclude expert testimony when there are gaps between the evidence relied on by an expert. 522 U.S. 136 (1997). Finally, a year later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) the U.S. Supreme Court clarified that "the *Daubert* gatekeeping obligation applies not only to 'scientific' testimony, but to all expert testimony" and insures the reliability and relevancy of the expert testimony whether the expert is "basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 138, 152.

Thus, under *Daubert,* there are three discrete inquiries: qualifications, relevance, and reliability and the party offering such testimony has the burden of establishing these factors. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000); *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987). To streamline the analysis, following the *Daubert* cases, Federal Rule of Evidence 702 was amended to incorporate these elements:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FRCP 702.

"The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence." *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 198 F.Supp. 2d 598, 601-02 (E.D. Pa. 2002) (*citing Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)). The Daubert analysis has been extended to the kind of "technical or other specialized knowledge" beyond scientific knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999).

Thus, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Nosal v. Granite Park LLC,* 269 F.R.D. 284, 286 (S.D.N.Y. 2010); citing *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). First, the court must address "the threshold question of whether a witness is 'qualified as an expert by knowledge, skill, experience, training, or education' to render his or her opinions." *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (quoting Fed. R. Evid. 702). After considering the expert's qualifications, the court must address reliability by considering factors "includ[ing] the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94). In cases not involving scientific testimony, "[t]he factor identified in *Daubert* may or may not be pertinent in

assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2001) (*citing Kumho Tire Co., Ltd.*, 526 U.S. at 152). Instead, the "relevant reliability concerns may focus upon personal knowledge or experience." *Id*.

Finally, the court must ask "whether the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely*, 414 F.3d at 397 (internal quotation marks and citations omitted). The testimony should not be "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001)). "Admissibility thus depends in part upon the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). To satisfy this requirement, the expert testimony must be "relevant to the task at hand." *See Daubert*, 509 U.S. at 591. As a general principle, expert testimony is unnecessary and properly excludable where "'all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation.'" *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 8 L. Ed. 2d 313, 82 S. Ct. 1119 (1962) (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 415 (8th Cir. 1909)); *see also Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

As stated in the Advisory Note to the Rule itself, "'there is no more certain test for determining when experts may be used than the common-sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular

issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Fed. R. Evid. 702 advisory committee's note (quoting *Ladd, Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)). In addition, expert testimony that either usurps the Court's role in determining the applicable law or addresses lay matters that do not require expert analysis is inadmissible. *Royal Park Invs. v. U.S. Bank Nat'l Ass'n,* 324 F. Supp. 3d 387, 394 (S.D.N.Y. 2018); *Nimely*, 414 F.3d at 397 (2d Cir. 2005).

In this case, Mr. Sponsler's expert opinions simply do not satisfy the requirement of Rule 702. He is not qualified to render these opinions, as his testimony regarding the ATDS system is not necessary, especially given his observations and general conclusions stem primarily from the deposition of James Lapic, rather than from his own expertise and as such are not reliable. In addition, given his complete lack of expertise in the area of identifying class members and his complete reliance on Defendant's expert Ms. Smith and hypothetical problems, such duplicative and unnecessary opinions should be excluded. Further, his testimony will not help the trier of fact understand the evidence more easily than they can understand themselves from the facts and evidence and he is not in a position to provide legal opinions on these matters. For these reasons, Mr. Sponsler should be excluded from testifying on these issues.

### 1.  Qualification: Sponsler is not qualified to opine on the subject of ATDS

Under Rule 702, a witness who is qualified may testify in the form of an opinion if additional requirements are met; however, the first hurdle for an expert to be allowed to testify is the expert's own competency and qualifications as an expert. To meet the qualification requirement, a party must show that its expert has sufficient "knowledge, skill, experience, training, or education to render his or her opinions." *Nimely*, 414 F.3d at 396 n.11. "[C]ourts generally look to evidence of the witness's education and experience" and determine whether such

qualifications and expertise sufficiently "fit" with "the subject matter of the witness's proposed testimony." *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). The test is really "whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *Id.*

In *Nimely,* the Second Circuit emphasized that, just "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely,* 414 F.3d at 399 n. 13. "The expert's qualifications . . . must be relevant to the opinions she offers. Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994).

"When an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Vale v. United States*, 2015 U.S. Dist. LEXIS 134384, 2015 WL 5773902, at *12 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 135717, 2015 WL 5773729 (E.D.N.Y. 2015), *aff'd sub nom. Vale v. United States of Am.*, 673 F. App'x 114 (2d Cir. 2016) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendments)); *Stagl v. Delta Air Lines,* 117 F.3d 76, 81 (2d Cir. 1997) ("a district court may properly conclude that witnesses are insufficiently qualified . . . because their expertise is too general"). "Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). "[W]hile an expert's

overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability. . . . Our caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." *Quiet Tech.* DC-8, Inc. v. *Hurel-Dubois UJ Ltd.*, 326 F.3d 1333, 1341-42 (11th Cir 2003).

Mr. Sponsler explained in detail his past education and experience in his deposition testimony. He had no college education, but his first job was as a project manager for a software development company. Exhibit D, Deposition of Ken Sponsler, 6:2-16. He confirmed this was a managerial role and did not consist of any programming, software development, designing of phone systems, patenting, or any other technical expertise. *Id.,* 10:15-20, 23-11:5. He also confirmed he had never designed software or hardware for any computerized dialing phone systems or drafted a software manual or user guide for a specific technology like a phone system. *Id.,* 11:11-12:19.

Throughout his deposition, Mr. Sponsler repeatedly confirmed that he has no technical expertise. He first confirmed he has no technical expertise through his education. *Id.,* 10:17-20. He then confirmed he has not acquired any technical expertise from any other role. *Id.,* 10:23-11:16. Concerning questions of his technical expertise, Mr. Sponsler stated "Sir, these questions are well out of my expertise. I don't have a need for any of those skill sets." *Id.,* 12:14-16. Mr. Sponsler did state that if he needed technical assistance, he would task his employees with figuring out what was necessary and how to do it. This testimony makes clear that Mr. Sponsler simply cannot be admitted as an expert on the issue of whether the phone system is an ATDS. How can one without any technical expertise declare that a sophisticated system does not have the capability to generate sequential numbers? In truth, Mr. Sponsler's only knowledge concerning the capabilities of the Zipwhip system come, not from any specialized knowledge, but from Mr.

11

Lapic's deposition testimony—a piece of evidence any juror could read to reach a similar conclusion. This will explain why Mr. Sponsler repeatedly references the testimony of Mr. Lapic, an actual Zipwhip employee, rather than providing his own discrete opinions. *See* Footnote 1.

In addition, Mr. Sponsler outright admits that he has never been an expert witness in a class action case where the issue of ascertainability arose, and had never assisted in the identification of class members in class litigation. *Id.* Exhibit D, Sponsler Depo. 30:6-15. However, he still attempts to opine that "Plaintiffs' expert's assertions regarding the ability to reliably and accurately identify names and current addresses of class members through objective or administratively feasible means for the proposed classes are unsupported and speculative." *See* Exhibit A, page 2. He provides no indication in his expert report of *any* qualifications he has which qualify him as an expert in this regard, in fact based on the list of cases in which he has provided expert testimony, only one of the many listed was even a class action. His opinions, again, are based not on his own qualifications and expertise, but that of Defendant's other expert, Jennifer Smith and general understanding of the difficulty in determining cell phone ownership. For example, in one section, he states: "While Ms. Verkhovskaya's report describes her attempts to remove all business telephone numbers, her efforts are insufficient, as Jennifer Smith's report will explain in more detail." Exhibit A, page 55, ¶128.

Where, as here, an expert's opinion provides no "explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion"—and relies only on the "*ipse dixit*" of the expert—it must be excluded under *Daubert* and Rule 702. *See Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006); *see also Bah v. Nordson Corp.*, 2005 U.S. Dist. LEXIS 15683, 2005 WL 1813023, at *9 (S.D.N.Y. 2005) ("[T]he trial court's gatekeeping function requires more than simply taking the expert's word for it." (quoting Fed. R. Evid. 702 advisory

committee's note (2000 Amendments))). Sponsler lacks the requisite "knowledge, skill, experience, training, or education" needed to opine on the issue of the ATDS or to provide any assistance in the determination of class numbers. Fed. R. Evid. 702. Accordingly, testimony by Defendant's witness, Ken Sponsler, on the issue of the ATDS should be excluded.

### 2. <u>Reliability: Sponsler's opinions are not based on sufficient facts or data, his testimony is not the product of reliable methods and he has not reliably applied these methods to the facts of the case.</u>

The second question to be addressed is whether the proffered testimony has a sufficiently reliable foundation making this the most heavily litigated component of the *Daubert* analysis. Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. It is "critical that an expert's analysis be reliable at every step," for "any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." To determine the reliability of the testimony, the Court may consider factors including:

(1) whether a theory or technique can be (and has been) tested,
(2) whether the theory or technique has been subjected to peer review and publication,
(3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and
(4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 593-94; *see also Fed. Deposit Ins. Corp. v. Suna Assocs., Inc.*, 80 F.3d 681, 687 (2d Cir.1996).

In *Daubert*, the Supreme Court set out a list of non-exhaustive considerations for a trial court to consider in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique upon which the expert relies has been tested — that is, whether

13

the expert's technique can be challenged in some objective sense, or whether it is simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted by the expert community. *See Daubert*, 509 U.S. at 593-94.

The test of reliability, however, is a "flexible one," and the considerations set forth in Daubert do not constitute a definitive checklist or test. *See Kumho Tire Co.,* 526 U.S. at 150. When applying this test, the "trial judge [has] considerable leeway" in determining whether to admit or exclude the testimony. *Id.* at 152. However, the Court's determination should be made in accordance with "the liberal admissibility standards of the federal rules and recognize[] that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 266 (2d Cir. 2002).

Although these criteria are more applicable to assessment of a scientific expert's opinions, they "may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier*, 387 F.3d at 1262. The Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (*internal quotes omitted*). "It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions." *Quiet Technology*, 326 F.3d at 1341.

"[N]othing in either *Daubert* or the Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.* at

1111(*internal quotes omitted*). A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). "Expert testimony…must constitute knowledge, meaning more than subjective belief or unsupported assumptions." *Home Design Servs.*, 2005 U.S. Dist. LEXIS 41745, at \*9; *citing McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir.2004). "An expert's unexplained assurance that her opinions rest on accepted principles fares no better." *McClain v. Metabolife International, Inc.*, 401 F.3d 1233, 1242 (11th Cir.2005). In other words, an expert'**s** opinion is not reliable if it "simply rehash[es] otherwise admissible evidence about which he has no personal knowledge." *Water Pollution Control Auth. of Norwalk v. Flowserve US Inc.,* 2018 U.S. Dist. LEXIS 52168, at \*19 (D. Conn. 2018) (internal citations omitted).

Moreover, "the Daubert requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for every step in the analysis -- means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain*, 401 F.3d at 1245 (*internal quotes omitted*); *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir.2003) ("An expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion."); *see also Daubert,* (on remand), 43 F.3d 1311, 1316 (9th Cir.1995) ("an expert's bald assurance of validity is not enough").

In this case, Mr. Sponsler seeks to explain the Zipwhip platform in such a way as to try to explain to the jury what result to reach and substitute his judgment for the jury's. Sponsler tested the platform once two years ago before this case had even been filed. There is no evidence of these tests provided with his report. Sponsler provides a brief summation of what occurred and expects that Plaintiff and the jury will take these findings at face value.  It is unclear the level of

detail he used, or even what tests were run in making his determination that the Zipwhip platform could not function as an ATDS.

In addition, while Sponsler opines that Plaintiff's operative Complaint fails to identify any valid proposed classes and claims individual inquiries will be necessary, he fails to indicate in support of this opinion why such extensive inquiries would be necessary. He then moves on to his more substantive opinion which claims that obtaining the identity of the class would not be administratively feasibly, but again his methodology in support of his opinion falls short. First, he attacks "reverse look up" providers because of the possibility that their data may not be accurate and a percentage of numbers will not return a match. But is this really any different than any data set? Sponsler provides no concrete support for his claim that this data is unreliable within a reasonably degree of certainty. He goes on to question the LexisNexis products, for example, as a leading provider of such services; however, it is unclear from Sponsler's report whether he has any basis for such arguments. Beyond generally stating that he has personal experience with such tools as "PhoneFinder," he does not indicate the degree of familiarity he has with this LexisNexis product or whether he has tested its reliability under similar circumstances. He also addresses the issues of the lack of subscriber data for pre-paid cell phones and wholesale wireless services without any indication that these additional issues are even relevant to the class identification at issue in this case. Further, while pointing out circumstances where reverse-look up and other identification tools have not been applied by the courts, there are equally as many cases where they have been found reliable, especially in association with other methods, and Sponsler's opinions fail to address the fact that these tools are commonly used in TCPA cases as the industry standard for such determinations. *See West v. Cal. Servs. Bureau,* 323 F.R.D. 295 (N. D. Cal 2017); *Knapper*

*v. Cox Communications, Inc.,* 329 F.R.D. 238, 244 (D. Az. 2019). Given this lack of thoroughness in his report, Sponsler's reliability on these issues is unconvincing.

As Sponsler's methodology is in question and cannot be scientifically assessed for reliability, and does not appear to provide any context to the jury on the issue of ATDS or determination of class numbers, Mr. Sponsler's expert opinions offered in this matter should be excluded.

### 3.   Relevance: Sponsler's specialized knowledge will not help the jury to understand the evidence or to determine a fact in issue

In addition to qualification, Daubert instructs that Evidence Rule 702 requires the Court to make a determination regarding relevance or "helpfulness," or whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact in issue. *See Daubert*, 509 U.S. at 591. Pursuant to Rule 401 of the Federal Rules of Evidence, relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To satisfy this requirement, the expert testimony must be "relevant to the task at hand." *Id.* It will do so if it "concerns matters that are beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262. Expert testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (citations omitted).

A court should not admit testimony "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). Given this, expert testimony is generally not helpful, and therefore not admissible, when "it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at

1262-63. Expert testimony that either usurps the Court's role in determining the applicable law or addresses lay matters that do not require expert analysis is inadmissible. *See Nimely*, 414 F.3d 381, 397 (2d Cir. 2005).

Sponsler's opinions simply do not stem from his supposed expertise. It is clear that he relies heavily on the testimony of Mr. Lapic, a Zipwhip witness, because he does not in fact have any first-hand knowledge or understanding of the technical specifications of any telephone platform, let alone the Zipwhip platform. Given the lack of qualifications or background in the area of ATDS, it is difficult to see how Sponsler's testimony would be "helpful to the jury in comprehending and deciding issues beyond the understanding of a lay person." *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005). Sponsler's lack of experience in the creation, programming, development or maintenance of any phone system make his opinions nothing more than "conclusions, observations, and speculations [that] are not proper testimony from an expert witness." *Id.* These opinions would add nothing to what the jury could not itself discover in reviewing the relevant materials.

As any juror can glean this same information from the evidence, including Mr. Lapic's deposition if admitted, and therefore Mr. Sponsler is simply not needed on this issue. Mr. Sponsler's only "expertise" comes from having the opportunity to use the Zipwhip platform in a prior case without any indication that he has any unique knowledge regarding the system. The jury is perfectly capable of understanding Mr. Lapic's testimony for themselves without the assistance of Mr. Sponsler who has no technical expertise, and therefore cannot expound on anything technical in this case. The general nature of Mr. Sponsler's explanations show that his expert testimony on this issue is simply unnecessary and as such should be excluded.

Similarly, Mr. Sponsler has unequivocally confirmed that he has no experience in identifying class members for class actions and has never been retained as an expert for this type of issue. Exhibit D, Sponsler Depo. 30:6-15. While he may be able to provide general information regarding ownership of cell phones and the difficulty in determining ownership through various methods, this information is not something that requires an expert witness. The layperson is easily able to understand that cell phone numbers are occasionally passed on and reassigned to new consumers, without the additional irrelevant information which Sponsler explains regarding issues like pre-paid cellular plans, wholesale wireless services, etc. which will serve only to confuse the jury. Further, Sponsler provides pages of background information without significantly applying the relevance of such information to the issue of class identification in this case. These alleged issues with reverse look-up and identification of class members, along with the issue of reassignment of wireless numbers and the use of a single phone for both personal and business usage, are all simple concepts for the layperson to understand and Sponsler does not provide any "expert" level knowledge or explanation of these issues, which makes them superfluous and unnecessary to the underlying class determination. As such, this general information on the issue of cell phone ownership is also unnecessary and should be excluded.

**B. Mr. Sponsler's Testimony Should Be Excluded Pursuant to Federal Rule of Civil Procedure 26 as his rebuttal evidence introduces extensive improper legal opinions.**

Mr. Sponsler's improper opinions and testimony on the issue of the ATDS should be excluded pursuant to Federal Rule of Civil Procedure 26(a)(2) as his rebuttal report exceeds the scope of rebuttal evidence. "Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that embraces an ultimate issue to be decided by the trier of fact, an expert

witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). Expert witnesses are prohibited from rendering legal opinions because such testimony usurps a court's "pivotal role in explaining the law to the jury." *Id.*; *see also Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013). Mr. Sponsler's opinion must be limited to exclude any resemblance of a legal opinion.

Ken Sponsler's August 11, 2021 expert rebuttal report in support of Defendant referenced and relied heavily on *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021). It is these references where Mr. Sponsler crosses the line from expert testimony into impermissible legal opinions by discussing the recent *Facebook* opinion and then claiming that "Plaintiffs and the putative class members cannot state a claim under the TCPA if the text messages they received from or on behalf of Lexus of Manhattan were not sent using an ATDS, according to the definition of this term recently rendered by the SCOTUS in its *Facebook* ruling, mentioned above." Pg. 22, ¶46

Mr. Sponsler's opinions simply cannot express whether or not the Zipwhip platform is an ATDS under the SCOTUS *Facebook* opinion. *See e.g.*, *Scalia v. E. Penn Mfg. Co.*, 2020 U.S. Dist. LEXIS 164234, at *40 (E.D. Pa. 2020) (prohibiting expert from testifying about elements of the law or whether or not defendant acted reasonably); *In re Ocean Bank*, 481 F. Supp. 2d 892 (N.D. Ill. 2007) (expert cannot opine that defendant's actions were not willful under the FCRA). In *In re Ocean Bank*, the court further struck the expert's opinion that defendant's actions were "consistent with regulatory creditworthiness practices." 481 F. Supp. 2d at 904. Similarly, Mr. Sponsler's opinion should further be excluded where he expresses that: "In my opinion, Footnote 7 was not intended to call into question the foundational requirement that an ATDS must store or produce telephone numbers to be called using a random or sequential number generator." Mr. Sponsler's opinions in his rebuttal report simply cross too far over the line to be considered simply expert

opinions based on his expertise rather than the legal opinions which he is clearly attempting to opine upon. As such, all opinions and discussions of the *Facebook* opinion should be excluded as improper.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests the Court exclude or limit the expert testimony of Ken Sponsler on the issue of the ATDS and the legal opinions included in his rebuttal report.

DATED: February 16, 2022                      Respectfully submitted,

BY: /s/ Daniel Zemel
Daniel Zemel
Zemel Law LLC
660 Broadway
Paterson, New Jersey 07514
(T) 862-227-3106
dz@zemellawllc.com
Attorney for Plaintiff

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February 2022 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

/s/ Daniel Zemel
Daniel Zemel, Esq.