UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN WATSON, DANIEL SAMARGHITAN, ANNEMARIE GREENE f/k/a ANNMARIE MOHAMMED, JOSE ESPINAL, Individually, and on Behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MANHATTAN LUXURY AUTOMOBILES, INC. d/b/a LEXUS OF MANHATTAN<br><br>Defendant | Case Nos.: 20-cv-04572 (LGS)(SLC)<br>21-cv-01588 (LGS) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS'**
**MOTION FOR RECONSIDERATION**

Motion DENIED for substantially the reasons in the Opinion and Order at Dkt. No. 190.  "A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (cleaned up).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.* (internal quotation marks omitted).

The preclusion of Sponsler's opinion that the Zipwhip platform is not an ATDS was not based on any lack of qualifications or on any deficiency in Sponsler's experience.  The opinion is precluded because his opinion as presented is not based on his expertise.  He does not explain how his extensive general experience, combined with one experience using the Zipwhip platform leads to his conclusions about what the platform *cannot* do.  Sponsler's reports show that his opinions on that point rely solely on the testimony of James Lapic and on legal interpretation of the *Facebook* decision.  That evidence and case law may be presented when appropriate (i.e., on a motion summary judgment), but Sponsler's expert testimony is not a proper vehicle for those arguments.

Defendant may submit a brief supplemental report from Sponsler addressing only whether the Zipwhip platform is an ATDS, and Plaintiff's expert may submit a brief rebuttal report on only that opinion.  Sponsler may wish to explain, for example, how his expertise and experience, including with other platforms, informs his observations of the Zipwhip platform's capabilities.  If Defendant seeks to offer new opinions to that effect, the parties shall meet and confer on a schedule for the exchange of those reports and any other appropriate discovery prior to briefing on any motion for summary judgment.  Any renewed motions to preclude expert testimony shall be filed as in limine motions only after any summary judgment motion is adjudicated,

Dated:  October 18, 2022
New York, New York

*[signature]*

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................................ 1

APPICABLE LEGAL STANDARD FOR RECONSIDERATION .......................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.    SPONSLER'S OPINIONS AND REPORTS SATISFY THE REQUIREMENTS OFFEDERAL RULE 702 BECAUSE SPONSLER RELIED UPON HIS EXTENSIVE EXPERT EXPERIENCE, USE OF THE PLATFORM, AND RELIANCE ON APPLICABLE DATA TO FORM A RELIABLE METHOD THAT WOULD UNDOUBTEDLY ASSIST THE TRIER OF FACT. ........................................................................................................ 3

    II.    SPONSLER'S RELIANCE ON FACEBOOK WAS NECESSARY TO IDENTIFY THE RECENT CHANGE IN INDUSTRY STANDARD AND TO REBUT THE INACCURATE STATEMENTS MADE BY SNYDER, AND DID NOT EQUATE TO A LEGAL OPINION AS TO ZIPWHIP'S CAPABILITIES ................................................................................. 7

    III.    PRECLUSION OF SPONSLER WAS PREMATURE AND QUESTIONS CONCERNING ADMISSIBILITY SHOULD BE ADDRESSED AT SUMMARY JUDGMENT OR IN A MOTION IN LIMINE SIMILAR TO SNYDER ................................................................. 9

CONCLUSION .......................................................................................................................... 10

## Table of Authorities

**Cases**                                                                                                          *Page(s)*

*Betterbox Commc'nc Ltd. v. BB tech., Inc*,
   300 F.3d 325 (3d Cir. 2001) ............................................................................................... 3

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) .................................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................................................................................ 1

*Ebbert v. Nassau Cty.*,
   2008 WL 4443238 (E.D.N.Y. 2008) ................................................................................... 8

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................ 3

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ............................................................................................ 6, 8

*Nutting v. Zimmer, Inc.*,
   2021 WL 4251906 (S.D.N.Y. Sept. 17, 2021) .................................................................... 2

*Peters-Martin v. Navistar Int'l Transp. Corp.*,
   410 F. App'x 612 (4th Cir. 2011) ........................................................................................ 5

*Schrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ............................................................................................. 2-3

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D 33 (SDNY 2016) ............................................................................................... 8

*Twelve Sixty LLC v. Extreme Music Library Ltd.*,
   2020 WL 27479708 (S.D.N.Y. 2020) ................................................................................. 4

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ............................................................................................. 3

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
   571 F.3d 206 (2d Cir 2009) ................................................................................................ 6

**Rules**

Federal Rule 59 ........................................................................................................................ 1, 10

Rule 6.3 ................................................................................................................................ 1, 2, 10

Rule 702 ........................................................................................................................................ 3

## TABLE OF REFERENCED EXHIBITS[1]

| Doc. No. | Exhibit No. | Title | Abbreviation |
|---|---|---|---|
| 190 |  | Opinion and Order, dated September 29, 2022 | "Order" |
| 166 |  | Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude | "Opp." |
| 166-2 | A | Expert Report of Ken Sponsler, dated December 17, 2020, with Exhibits A and B | "Initial Report" |
| 166-3 | B | Expert Rebuttal Report of Ken Sponsler, dated August 11, 2021, with Exhibits A and B | "Rebuttal Report" |

---

[1] All exhibits have been previously filed with the Court and are referred to by docket number so as to not burden the Court with duplicative exhibits. For the convenience of the Court, Lexus annexes the Initial Report and Rebuttal Report along with only Exhibits A and B to each respective report.

## PRELIMINARY STATEMENT

Defendant Manhattan Luxury Automobiles, Inc. ("Lexus") respectfully requests, pursuant to Local Civil Rule 6.3 and Federal Rule 59, reconsideration of discrete aspects of the Court's Opinion and Order, dated September 29, 2022 (the "Order") (Doc. No. 190) to address specific factual statements and findings overlooked in the Court's Order that granted, in part, Plaintiffs' Motion to Exclude Lexus's expert Ken Sponsler.

The Court stated that Sponsler "lists several documents that he purportedly reviewed, but there is no indication as to most that they form the basis for his ATDS opinions. Instead, most of this portion of Sponsler's report restates Lapic's characterization of the Zipwhip platform." (Order, p. 8). That finding was critical to the Court's decision that Sponsler's Initial Report would not assist the trier of fact. (*Id.*). The Court also stated that Sponsler failed to show what Zipwhip's platform cannot do. (*Id.*) That statement is not supported by the record, and, ultimately led the Court to conclude that Sponsler's testimony would mislead the jury. (*Id.*) The Court further found that Sponsler's rebuttal report was an extended legal argument. (*Id.*)

Lexus respectfully requests reconsideration because Sponsler's Initial Report and Rebuttal Report specifically provided the foundation of his methodology and opinions, satisfying the requirements under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):

- As reflected in Exhibit B to each report, Sponsler relied upon 33 different types of documents including but not limited to pleadings, discovery responses, data spreadsheets, testimony of party and non-party witnesses, testimony of expert witnesses, and the expert reports issued by Randall Snyder, Anya Verkhovskaya, and Jennifer Smith in forming his opinions and conclusion. (Ex. B to Initial Report; Ex. B to Rebuttal Report).

- In forming his opinions and conclusions, Sponsler personally accessed and tested Zipwhip Version 1.0 Economy Package to evaluate the systems capabilities to determine what the platform can and cannot do. (Initial Report, ¶¶ 18, 85).

- Based upon his use of the system, Sponsler explained the seven-step process necessary for a user of the Zipwhip platform to send a text message on an individual or group basis. (Initial Report, ¶ 93-94).

- In forming his opinions and conclusion, Sponsler provided his own "Summary of the Zipwhip Economy V1.0 Package," identifying the limited capabilities of what the platform can and cannot do. (Initial Report, ¶ 87).

- In forming his opinions and conclusions, Sponsler relied upon over twenty years of hands-on operational experience assisting companies with dialer design, implementation, and operation, and his experience as an expert in over 200 cases where he has never been successfully excluded. (Initial Report, ¶¶ 5, 15-16; Ex. A of Initial Report; Ex. A of Rebuttal Report).

- Based upon Sponsler's decades of experience, personal use of the Zipwhip platform, review of the applicable instruction manuals, and confirmation of his assessment through the review of the testimony of James Lapic, Sponsler opined that "In my twenty plus years of experience analyzing SMS/text platforms, **the Zipwhip Version 1.0 Economy Package was about as basic and manually operated as it comes**." (Initial Report, ¶¶ 85, 88, 95) (emphasis added).

As detailed over his three reports, totaling 146 pages, Sponsler's opinions were rendered upon his review of voluminous facts and data, his personal use of the text messaging platform, reliable industry principles and methods set forth by the United States Supreme Court, and his specialized knowledge of ATDS systems and the National Do Not Call Registry. In short, Sponsler's Reports satisfied the *Daubert* requirements. And, critically, the Court's preclusion of his Opinions will cause undue prejudice to Lexus. Therefore, Lexus respectfully requests that this Court reconsider its' Order and upon reconsideration deny Plaintiffs' Motion to Exclude Sponsler in its entirety.

### **APPICABLE LEGAL STANDARD FOR RECONSIDERATION**

In this district, reconsideration is properly considered under Rule 6.3 of the Local Civil Rules for the Southern and Eastern District of New York. A party moving for reconsideration under L. Civ. R. 6.3 must "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Nutting v. Zimmer, Inc.*, 2021 WL 4251906, at *30 (S.D.N.Y. Sept. 17, 2021) (quoting *Schrader*

{N2243190.1}                                            2

*v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Adjudged by that standard, the Court overlooked and/or misapprehended the (reliable) basis of Sponsler's opinions, data, and methodology, to wit: his extensive experience, personal testing of Zipwhip's platform, including its capabilities and limitations, review of applicable manuals and instructions of the system, and industry standard set forth in *Facebook Inc. v. Duguid*.

## ARGUMENT

I. **SPONSLER'S OPINIONS AND REPORTS SATISFY THE REQUIREMENTS OF FEDERAL RULE 702 BECAUSE SPONSLER RELIED UPON HIS EXTENSIVE EXPERT EXPERIENCE, USE OF THE PLATFORM, AND RELIANCE ON APPLICABLE DATA TO FORM A RELIABLE METHOD THAT WOULD UNDOUBTEDLY ASSIST THE TRIER OF FACT.**

The Court's preclusion of Sponsler's Reports is premised on its finding that Sponsler's opinions were not "based upon reliable data and methodology," and that Sponsler's testing did not show what the platform could not do. (Order, p. 8). From this, the Court held that Sponsler's Reports would not "assist the trier of fact" and could mislead the jury. (*Id.*)

Respectfully, the Court's conclusion disregards Sponsler's twenty plus years of experience analyzing dialer systems (Ex. A of Initial Report and Rebuttal Report) and overlooks the fact that Sponsler relied upon, *inter alia*, that experience in rendering his opinions, and, in effect, obscures Rule 702's requirements for the admissibility of expert testimony. *See Betterbox Commc'nc Ltd. v. BB techs., Inc,* 300 F.3d 325, 329 (3d Cir. 2001)(*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)(In cases not involving scientific testimony, the "relevant reliability concerns may focus upon personal knowledge or experience."). Moreover, Sponsler's Reports expressly

{N2243190.1}  3

identify the documents and data reviewed and relied on (and tested), *and* explain how that review and reliance informed his opinions. (*See* Ex. B of Initial Report and Rebuttal Report; Initial Report, ¶¶ 17-19). Examples of such are reflected in Sponsler's Reports:

- "Based on my examination of Zipwhip's V1.0 Economy Package. . ., it is my opinion that it did not have either of these capacities": the platform could not generate random or sequential numbers, and the initiation of a text message required human intervention at every step of the process. (Initial Report, ¶ 85, 88).
- Paragraph 87 of the Initial Report provided Sponsler's personal "Summary of the Zipwhip Economy V1.0 Package" that detailed the ability and inabilities of the platform. (Initial Report, ¶ 87).
- Sponsler opined that "[i]n contrast to systems that employ random or sequential number generators, or other automatic dialing systems such as predictive dialers, Zipwhip required human intervention at every step." (Initial Report, ¶ 93).
- "It is therefore my opinion that Plaintiffs have not provided any factual evidence to support their claims that Defendant placed text messages . . .using 'equipment [] able to effectively send thousands of text messages within an extremely short period of time without human intervention. . .Plaintiffs have also not provided any support that Zipwhip texting platform at issue stored lists of numbers and called those numbers, without human intervention." (Initial Report, pp. 90-91).
- "[T]he evidence clearly reveals Mr. Snyder's theory of Zipwhip's sequential telephone number generation is incorrect and unsupported." (Rebuttal Report, ¶60).
- "From my review of the Zipwhip Version 1.0. . .I was able to confirm that Zipwhip does not generate telephone numbers." (Rebuttal Report, ¶ 64).

Sponsler's Reports make clear that his opinions were based on reliable documents and data, and do not simply "restate" the testimony of James Lapic (Order, p. 8). In fact, Sponsler utilized Lapic's testimony simply to confirm his findings. (*See* Rebuttal Report, ¶ 65 Sponsler stated that his "opinion was confirmed by the Deposition Testimony of Mr. Lapic, who is most familiar with the operational and functional aspects of the system, in the Schleifer case as well as my own hands-on experience."). This Court has held that experts "are permitted a wide latitude to offer opinions, including those that are ***not based on firsthand knowledge*** or observation" *Twelve Sixty LLC v. Extreme Music Library Ltd.*, 2020 WL 27479708, at *21-22 (S.D.N.Y. 2020) (emphasis added). Here, Sponsler did have first-hand knowledge of the capabilities of the platform as he personally tested it and summarized the systems capabilities (Initial Report, ¶ 87), and his ultimate opinions

were based on twenty plus years of experience analyzing dialer systems including 200 instances wherein he was retained as an expert witness.

The Court further stated that Sponsler's description of his "one experience using Zipwhip" was "insufficient to show what the platform *cannot* do, and this testimony could mislead the jury." (Order 8). As Sponsler described Zipwhip's platform to be "about as basic and manually operated as it comes" (Initial Report, ¶95), he was able to clearly understand through personal operation of this system that the platform could not perform as Plaintiffs' alleged in this action. As such, Sponsler did not require any further testing than one instance, and the Order's assumption that one test was insufficient clearly overlooked Sponsler's findings within the Initial Report. Even so, Sponsler's Report expressly states under his "Summary of the Zipwhip Economy V1.0 Package" the limited functionality of the platform as follows: No capacity to produce telephone numbers; no capacity to randomly or sequentially produce numbers; no ability to "schedule" text message delivery; no ability to "upload" a list of telephone numbers; no ability to "save" or "store" groups for use at a future time; no ability for users like Lexus to access software code to make changes; Lexus had no access to the Application Programming Interface ("API"), and there was limited ability to send no more than 50 text messages as they had to be copied and pasted. (Initial Report, ¶87). To that end, the fact that he performed only one test does not upend Sponsler's expert opinion. *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 F. App'x 612, 618 (4th Cir. 2011) (stating that the party seeking to admit an expert witness must demonstrate both that the expert's experience is a sufficient basis for the opinion and that the experience is "reliably applied to the facts").

Moreover, the Court erred in finding that Sponsler's testimony will not assist the trier of fact. The Second Circuit has instructed that expert testimony should be excluded if it is inherently

unreliable, speculative, or "based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, *LLC*, 571 F.3d 206, 213-14 (2d Cir 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). That standard also requires preclusion of expert testimony that is not sufficiently rooted in the facts of the case – for example, if the available data and proffered opinion are separated by an analytical chasm – as the gap cannot be bridged by the expert's say-so. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). Neither the Initial Report nor the Rebuttal Report meet the Second Circuit's standards for exclusion. Sponsler's knowledge, experience, review of relevant manuals and testimony, and actual testing of the relevant platform would allow Sponsler to demonstrate the simplicity of Zipwhip Version 1.0 to the trier of fact as well as contrast the irrelevant platform and manuals reviewed by Snyder in rendering his opinions. As such, Sponsler's Reports provide an "apple to apple" comparison and analysis of the applicable text messaging platform Lexus used that would provide the trier of fact with an understanding of the necessary functionality of a system to be considered an ATDS.

By the way of contrast, the Court declined to preclude Snyder's dialer functionality opinion, concluding that objections to Snyder were premature as they concern "weight, not admissibility," as Lexus argued that Snyder relied upon incorrect manuals and legal conclusions. But the Court precluded Sponsler's dialer functionality opinions. The Order should have applied the same standard uniformly to both Sponsler and Snyder, compelling denial of preclusion.

## II. SPONSLER'S RELIANCE ON FACEBOOK WAS NECESSARY TO IDENTIFY THE RECENT CHANGE IN INDUSTRY STANDARD AND TO REBUT THE INACCURATE STATEMENTS MADE BY SNYDER, AND DID NOT EQUATE TO A LEGAL OPINION AS TO ZIPWHIP'S CAPABILITIES.

The Court precluded Opinion One of the Rebuttal Report on the basis that "an expert opinion is not the appropriate vehicle for legal argument," finding that "Sponsler's rebuttal report is an extended legal argument that Plaintiff's expert, Snyder, misunderstands the Supreme Court's decision in *Facebook*." (Order, p. 8). Lexus respectfully submits that the Court misapprehended that portion of the Report because Sponsler relied on *Facebook* for two purposes: (1) to show that the Supreme Court's decision set forth the applicable industry standard in the context of autodialers, and (2) to identify the factual inaccuracies Snyder relied upon to opine Zipwhip's platform is an ATDS under *Facebook*. (Rebuttal Report, ¶¶ 49-65).

As indicated in Lexus's opposition papers, Sponsler addresses *Facebook* to directly controvert, distinguish, and rebut the improper statements and opinions made by Snyder concerning Zipwhip's functionality as an ATDS. (Opp. pp. 18-22, Argument II; *see also*, Rebuttal Report, ¶¶ 49-65). Moreover, the following excerpts and paragraphs from the Rebuttal Report are examples of statements concerning *Facebook* that were in fact not a legal conclusion or an extension of legal arguments:

- "I am not a lawyer and am not providing any legal opinion herein. However, my work as an expert witness involves following relevant court rulings very closely as they are informing my opinions. As such, as I understand it the SCOTUS determined in its *Facebook* ruling, the correct autodialer analysis." (Rebuttal Report, ¶ 48).
- Paragraph 49 directly quotes Snyder's reliance upon the *Facebook* decision and Snyder's quoted understanding as to what system qualified as an ATDS ("I understand that "To qualify as an 'automatic telephone dialer system' under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." (*Facebook, Inc. v. Duguid*) In addition, I understand that, "…an autodialer might use a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time."). In that same paragraph, Sponsler addresses

- Snyder's testimony that interprets his understanding of an ATDS pursuant to *Facebook* (*Id*., ¶ 49).
- "In my opinion, Mr. Snyder is basing his opinion that the Zipwhip Version 1.0 of the Economy Package is an ATDS under the TCPA on a lack of specific knowledge about how the very basic Zipwhip Economy V1.0 actually functioned and two misconstrued lines in Footnote 7 of . . .*Facebook*." (*Id*., ¶ 55).
- "The SCOTUS' citation to PACES's Amicus Brief in Footnote 7 clearly supports the conclusion . . .that Footnote 7 was not intended to call into question the foundational requirement that an ATDS must store or produce telephone numbers to be called using a random or sequential number generator. This appears to be the basis for Mr. Snyder's assertions." (*Id*., ¶ 58).
- Following factual analysis of Snyder's work product, Sponsler states "the evidence clearly reveals Mr. Snyder's theory of Zipwhip's sequential telephone number generation is incorrect and unsupported. . .[and] his deposition testimony is contrary to those statements." (*Id*., ¶¶ 60).
- "From my review of the Zipwhip Version 1.0 of the Economy Package, I was able to confirm that Zipwhip does not generate telephone numbers, and upon information and belief, it did not generate any of the mobile numbers that were sent a text or texts that is/are at issue in this litigation." (*Id*., ¶ 64).
- "Based upon my personal review of the Zipwhip platform at issue, I find that the system does not possess the 'capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator.' (*Facebook, Inc. v. Duiguid*)". (*Id*., ¶ 65).

As raised in Lexus's motion to exclude Snyder's reports (Doc. No. 151) and in opposition to exclusion (Opp. pp. 18-21), because Snyder provided an improper recitation of *Facebook*, Sponsler needed to respond to, and rebut, each improper statement conveyed by Snyder within the Rebuttal Report. Thus, the Rebuttal Report was not an extended legal argument. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D 33, 44 (SDNY 2016) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.") *quoting Ebbert v. Nassau Cty.*, 2008 WL 4443238, at *13 (E.D.N.Y. 2008). Indeed, Sponsler's Rebuttal Report concluded that "Snyder's assertions that [Lexus] used an ATDS to send SMS messages to its customers is based upon multiple incorrect assumptions, faulty analysis, and information about irrelevant, unrelated and incorrect Zipwhip platforms not in use in this case." (Rebuttal Report, p.

{N2243190.1}                                     8

47). For those reasons, Lexus respectfully requests that the Court reconsider its determination that Sponsler issued legal conclusions and deny Plaintiff's Motion to Exclude in its entirety.

### III. PRECLUSION OF SPONSLER WAS PREMATURE AND QUESTIONS CONCERNING ADMISSIBILITY SHOULD BE ADDRESSED AT SUMMARY JUDGMENT OR IN A MOTION IN LIMINE SIMILAR TO SNYDER.

In rendering the Order, the Court conflated the competing expert reports as indicated in the portion of the Order denying preclusion of Snyder. The Court incorrectly stated that "[t]he fact that *Defendant* only read technical documentation and did not test the system, and that *Defendant* did not agree in every respect with Lapic's conclusion goes to weight, not admissibility." (Doc. No. 190, p. 5, Section 1)(emphasis added). This portion of the Order should have been directed at *Plaintiffs'* expert Snyder, not Defendant. Additionally, the Court opined that Snyder's opinions on "whether the technical features of Defendant's Zipwhip system are consistent with the statutory definition of an ATDS" is "irrelevant for class certification." [*Id.*]. A finding that Snyder's opinion as to functionality of the text messaging platform system is irrelevant until summary judgment on one hand, and, in stark contrast, finding that Sponsler's similar opinion as to the functionality, or lack thereof, of the same exact text messaging system is reason for preclusion is manifestly unjust and prejudicial.

Moreover, the Court stated that "[p]resumably, if Snyder had offered legal opinions, Defendant would move to preclude on that ground." [*Id.*]. Defendant did in fact make such an argument in its motion to exclude (see, Doc. No. 151, p. 7, Section II, Subsection A.).

Similarly, the Court noted that Snyder's "CV of hundreds of prior expert engagements is over 100 pages long", however, the Court fails to recognize Sponsler's unblemished career of "twenty plus years of experience analyzing SMS/text platforms" (Initial Report, ¶ 95) and prior record as an expert witness in over 200 cases (Opp., pp. 2-3; Ex. A to Initial Report Ex. A; Ex. A

to Rebuttal Report Ex. A) without ever once being excluded (unlike the numerous exclusions ordered against Snyder)(Opp. pp. 5-10, Argument I). The weight of Sponsler's experience should have been similarly applied with issues of admissibility and credibility between the experts deferred to the trial stages of this litigation.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests this Court grant (1) the Motion to Reconsider pursuant to Local Civil Rule 6.3 and Federal Rule 59 and upon reconsideration deny Plaintiffs' Motion to Exclude Ken Sponsler in its entirety, and; (2) such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 13, 2022

                                          Respectfully submitted,

                                          LONDON FISCHER LLP

             By: *Jason M. Myers*
                                          Jason M. Myers, Esq.
                                          59 Maiden Lane
                                          New York, New York 10038
                                          (212) 972-1000
                                          JMyers@ londonfischer.com

                                          STEVENS & LEE, P.C.
                                          Stephanie Lopez
                                          669 River Drive, Suite 201
                                          Elmwood Park, New Jersey 07407
                                          (201) 857-6768
                                          stephanie.lopez@stevenslee.com

                                          *Counsel for Manhattan Luxury Automobiles Inc.*
                                          *d/b/a Lexus of Manhattan*

To:   Daniel Zemel (Plaintiffs' Counsel)(via ECF)