UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN WATSON, et al.,
                               Plaintiffs,

                   -against-

MANHATTAN LUXURY AUTOMOBILES, INC.,
                               Defendant.
------------------------------------------------------------X

20 Civ. 4572 (LGS)

<u>OPINION & ORDER</u>

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Brian Watson, Danial Samarghitan, AnnMarie Greene, Jose Espinal and Lymell Jackson bring this action on behalf of themselves and as court-appointed class representatives against Defendant Manhattan Luxury Automobiles, Inc., d/b/a Lexus of Manhattan ("LOM"), alleging that Defendant's practice of sending unsolicited text messages to consumers violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and regulations promulgated thereunder. Defendant moved for summary judgment on all claims, and Plaintiffs on behalf of themselves and the certified classes opposed the motion. Both sides submitted supplemental briefing after the Second Circuit issued its decision in *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 180 (2d Cir. 2024). For the reasons stated below, Defendant's motion is granted in part and denied in part.

    **I.    BACKGROUND**

      The following facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on this motion. The facts are undisputed or based on record evidence drawing all reasonable inferences in favor of Plaintiff as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Honda of Manhattan ("HOM") was a motor vehicle dealership that closed in January 2017. HOM customers who leased or purchased through HOM signed certain agreements, including Third-Party Customer Privacy Notice and Acknowledgement forms and Contract Authorization forms, that included provisions related to consent to receive communications and the ways in which HOM may disclose customer information to other parties.

HOM notified its existing customers of its closing by email and text message on January 31, 2017, stating that HOM's "sister dealership Lexus of Manhattan is still capable of servicing your Honda." The messages also contained opt-out language for customers to decline receiving future communications. HOM provided Defendant with a list of HOM customer contact information. Between February 7, 2017, and November 2017, Defendant sent text messages to customers whose contact information was included on the list and who had not opted out of future communications.

Defendant used a platform called Zipwhip Version 1.0, Economy Package ("Zipwhip") to send all of its messages to customers on the HOM list. The version of Zipwhip Defendant used could not and did not generate random telephone numbers to text. The telephone numbers that Defendant used Zipwhip to text all came from the HOM list.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[1] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *accord Rodriguez v. City of New York*, No. 21 Civ. 1384, 2023 WL 2368985, at *2 (S.D.N.Y. Mar. 6, 2023).

### III. DISCUSSION

#### A. Count 1: Violations of 47 U.S.C. § 227(b)

Summary judgment is granted to Defendant on Count 1 of the Complaint, which alleges a violation of 47 U.S.C. § 227(b) because Defendant did not use an automatic telephone dialer system as defined by the TCPA. Under the TCPA, it is unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). An "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). A recent Second Circuit case, *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, held that a system, such as the one here,

that "uses a pre-existing list of telephone numbers that are not automatically or randomly generated, but that are drawn from other sources, including . . . from consumers themselves who voluntarily provided them," is not an automatic telephone dialer system. 101 F.4th at 183. Plaintiffs do not dispute this conclusion, nor do Plaintiffs assert that Defendant used an artificial or prerecorded voice to contact Plaintiffs. Consequently, Defendant's motion is granted on Count 1.

### B. Counts 2 and 3: Violations of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. 64.1200(c)

As a threshold matter, Counts 2 and 3 are considered together as a single claim. Count 3 alleges violations of § 227(c)(3)(F), which requires the Federal Communications Commission (the "FCC") to promulgate regulations prohibiting telephone solicitations to numbers on the National Do Not Call Registry (the "NDNCR"). Plaintiffs' Count 2 alleges violations of those implementing regulations. Count 3 alone does not state a claim because there is no private right of action under § 227(c) for statutory violations of that subsection, only for violations of the regulations implementing the subsections. 47 U.S.C. § 227(c)(5) (creating private right of action to bring "an action based on a violation of the regulations prescribed under this subsection" and to seek an injunction or damages). The implementing regulations for § 227(c) do not establish a separate private right of action independent of that created by the TCPA. *See* 47 C.F.R. § 64.1200(c). Counts 2 and 3 are therefore construed together to allege violations of the relevant implementing regulations, as authorized by § 227(c)(5).

Summary judgment is denied on the claims brought pursuant to 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) because a reasonable jury could find that Plaintiffs registered for the NDNCR and did not have an established business relationship with Defendant.

### i. The NDNCR Statute and Regulations

Section 227(c) and 47 C.F.R. § 64.1200(c) prohibit unwanted telephone solicitations to persons who are registered on the NDNCR. Section 227(c)(3)(F) requires the promulgation of regulations that "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in" the NDNCR. 47 U.S.C. § 227(c)(3)(F). The NDNCR is a database compiled by the FCC and comprised of individuals who object to receiving telephone solicitations. The ensuing regulation prohibits "any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the [NDNCR]." 47 C.F.R. § 64.1200(c)(2).

A "telephone solicitation" is defined as a "message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but does not include messages sent to "any person with that person's prior express invitation or permission" or "[t]o any person with whom the caller has an established business relationship . . . ." *Id.* § 64.1200(f)(15)(i)-(ii). The "express invitation or permission" language is repeated in the exceptions to liability for initiating a telephone solicitation to a number on the NDNCR -- when the caller or sender "has obtained the subscriber's prior express invitation or permission[, which] must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Id.* § 64.1200(c)(2)(ii).

### ii. Plaintiff Espinal's NDNCR Registration

As a threshold matter, Defendant's argument is unpersuasive that Plaintiffs have not demonstrated Mr. Espinal signed up for the NDNCR. Mr. Espinal is the only Plaintiff who represents the NDNCR Class. Defendant argues that Mr. Espinal's testimony, which is the sole evidence showing he registered for the NDNCR, is insufficient to prevent summary judgment on

5

his § 227(c) claim.  Mr. Espinal testified at a deposition that he signed up for the registry online several years ago and has not removed his name, although he does not have documentary confirmation of his registration.  "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.* § 64.1200(c)(2).  Mr. Espinal's testimony is not contradicted by any other evidence and therefore is not the type of self-serving and inconsistent testimony that should be disregarded when evaluating factual disputes at summary judgment.  *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x. 654, 656 (2d Cir. 2009) (summary order) (stating that self-serving deposition testimony, by itself, "is insufficient to defeat summary judgment" when contradicted by "the hard evidence adduced during discovery"); *accord Carzoglio v. Paul*, No. 17 Civ. 3651, 2024 WL 776031, at *6 (S.D.N.Y. Feb. 26, 2024) (noting courts "need not adopt wholly self-serving testimony contradicted by the objective evidence in the case").  A reasonable jury could conclude that Mr. Espinal registered for the NDNCR as required by the regulations.

### iii. Express consent

Defendant argues that its messages were excepted by the regulation because Plaintiffs gave express consent to receive marketing messages from HOM and other related parties, which includes Defendant.  No reasonable jury could find that the forms Plaintiffs signed provided the requisite consent for Defendant to contact Plaintiffs, who were all registered on the NDNCR.

The prohibition on telephone communications does not apply if the caller or sender "has obtained the subscriber's prior express invitation or permission" as demonstrated in "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."  47 C.F.R. § 64.1200(c)(2)(ii).  Express permission must be "clearly and unmistakably granted," and

6

the consumer must understand "that by providing a [telephone] number, he or she is agreeing to receive [telephone] advertisements." *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 477 (2d Cir. 2021) (discussing an equivalent express consent exception in the context of faxed advertisements). This consent can grant permission both to a party and to its affiliates or other non-parties, if the consent makes clear who is granted permission. *Id.* at 478. For example, in *Gorss Motels, Inc.*, the Second Circuit found that the plaintiff had granted permission to a hotel and its affiliates where plaintiff had signed a form agreeing the hotel could send advertisements, and the form explicitly allowed the hotel's affiliates to send advertisements on the hotel's behalf and plaintiff's prior experience with the hotel indicated the type of advertisements plaintiff would receive. *Id*. at 477-78. Whether a plaintiff has provided express consent requires a fact-specific evaluation. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 55 (2d Cir. 2018), *as amended* (Jan. 9, 2018) (holding plaintiff had provided express consent for flu shot reminders when plaintiff signed a form allowing a hospital to share his number for "treatment" purposes, including to send messages on health-related benefits).

Here, Defendant argues that Plaintiffs signed two forms that granted express permission to receive advertisements from HOM and Defendant. The first is titled "Contract Authorization" and states, "[W]e would like to be able to contact you in order to ensure that you are happy with your purchase, keep you informed of new product offerings and promotions, remind you of necessary maintenance or service your vehicle may need, and for other reasons." The next paragraph states, "You agree that we may try to contact you in writing, by e-mail, or by using prerecorded/artificial voice messages, text messages and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us." In a separate paragraph preceded by a checkbox,

7

the agreement states, "By checking this box, you also authorize us to call your home phone number and your mobile phone number provided above using an automatic telephone dialing system or a prerecorded message for sales purposes.  You are not required to provide this authorization as a condition of purchasing any goods or services."  No Plaintiff marked this checkbox, but each Plaintiff signed the form.  For each Plaintiff except Mr. Watson, the form mistakenly defines "we," "us" and "our" to mean both that particular Plaintiff and HOM (rather than just the latter), and "You" and "your" to mean the customer.  In Mr. Watson's case "we," "us" and "our" is not defined at all as the space is left blank.

Regardless of whether a customer marked the checkbox or declined to do so, no reasonable jury could find that the Contract Authorization reached beyond HOM's contacts to provide express consent for Defendant's contacts.  While the Contract Authorization is "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed," 47 C.F.R. § 64.1200(c)(2)(ii), the permission granted is limited to HOM.  The definition of "we," "us" and "our" to whom consent is given names HOM and does not name or describe Defendant.

*Gorss* is not to the contrary.  Defendant is correct that permission may be transferred between parties under the TCPA, but the possibility of that transfer must be apparent from the consent given.  *Gorss*, 997 F.3d at 481 (noting that "the scheme that [plaintiff] agreed to is exactly what unfolded here: [defendant], through the agreement of its affiliate, WSSI, with Lands' End, offered optional assistance with purchasing items used at or in the motel by offering goods sold by Lands' End, a [defendant]-approved supplier").  Unlike in *Gorss*, where the

plaintiff explicitly consented to receiving marketing messages from affiliates of the entity it signed an agreement with, Plaintiffs here gave no such consent.

Defendant's argument that a second document, a notice provided by HOM to each Plaintiff, grants express permission for Defendant to send advertisements to telephone numbers on the NDNCR is also unavailing. The document does not meet the requirement for consent under the regulation -- "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii).

First, the form does not contain the customer's telephone number to which calls may be placed. Second, the form is not an "agreement" stating "that the consumer agrees to be contacted" by anyone. The form document itself states that it is a "notice" by HOM; it is not an agreement or consent by the customer. The document contains HOM's unilateral statement about what it "may" do with Plaintiff's information, such as telephone numbers. The form states that HOM "may disclose all of the information we collect . . . to companies that perform marketing services on our behalf or to other financial institutions with whom [HOM] ha[s] joint marketing agreements . . . [or] to nonaffiliated third parties as permitted by law." Above each Plaintiff's signature is "CUSTOMER ACKNOWLEDGEMENT" of having "received a copy of this notice on the date indicated below." Nowhere does the customer agree to be contacted by the parties who may receive HOM's customer's information, nor is the customer given the option to object or opt-out. No reasonable jury could find that this notice meets the regulatory requirements for consent sufficient to exempt Defendant from liability.

Defendant also argues that Plaintiffs' failure to opt out of its "follow-up" messages establishes consent. Defendant sent messages stating, "Good afternoon, this is Jen the service

9

concierge from Lexus of Manhattan. Can I text you regarding the maintenance for your Honda vehicle?" Defendant continued to solicit those customers who did not reply to opt out. But those customers' silent acquiescence were not "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Id*. Nothing in the statute suggests that sufficient consent can be created in this way.

### iv. Established Business Relationship

Defendant argues that Plaintiffs had an established business relationship with HOM that extended to Defendant, thus excepting its messages from the regulation. A reasonable jury could conclude that, under the relevant legal definition, Plaintiffs did not have an established business relationship that extended to Defendant. The regulation defines an "established business relationship" as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber" based on "the subscriber's purchase or transaction with the entity . . . or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity . . . , which relationship has not been previously terminated by either party." *Id.* § 64.1200(f)(5). The regulation adds, "The subscriber's established business relationship with a particular business entity does not extend to affiliated entities unless the subscriber would reasonably expect them to be included given the nature and type of goods or services offered by the affiliate and the identity of the affiliate." *Id.* § 64.1200(f)(5)(ii).

Plaintiffs had an established business relationship with HOM but a reasonable jury could find that Plaintiffs did not have an established business relationship with Defendant at the time of Defendant's messages. The first contact between Plaintiffs and Defendant was when Defendant

10

sent messages to Plaintiffs after HOM closed.  No one suggests that Plaintiffs had an established business relationship with Defendant independent of Defendant's relationship with HOM.

A reasonable jury could conclude that Plaintiffs would not reasonably anticipate that their relationship with HOM would include a relationship with a Lexus dealer in Manhattan as an affiliate of HOM.  The text of the regulation makes clear that the key question is whether Defendant was the type of affiliate that Plaintiffs would expect "to be included" in their business relationship with HOM "given the nature and type of goods or services offered by the [Defendant] and the identity of the [Defendant]."  *Id*.  This language implies that the affiliate should provide the same types of goods or services as HOM, and that Defendant's identity creates an expectation that it might provide related goods or services within the relationship between Plaintiff and HOM -- for example, if the affiliate were "Honda of Manhattan Parts and Service."  A jury could find that Plaintiffs would reasonably expect that a Manhattan Lexus dealer does not provide the same types of goods or services as the Honda dealer that sold them their vehicles, and that nothing about Defendant's identity creates an expectation that Defendant is within the relationship between Plaintiff and HOM, any more so than any other non-Honda car dealership in Manhattan.  A reasonable jury also could find (or not) that HOM's declaration to its customers when it closed that HOM's "sister dealership Lexus of Manhattan is still capable of servicing your Honda" does not change the type of goods or services that Defendant would seem to offer or its identity, which the regulation dictates are the relevant factors.  This question of fact is for the jury.

Defendant's established business relationship argument rests primarily on an alleged joint marketing agreement between HOM and Lexus.  The parties dispute the existence of such an agreement.  This decision does not address the issue since it is disputed, and because the

11

foregoing analysis is sufficient to deny summary judgment on the issue of an established business relationship.

### C. Willfulness

Summary judgment is granted to Defendant on Plaintiffs' claim for treble damages because no reasonable finder of fact could find that Defendant knowingly or willfully violated the TCPA and its regulations. Treble damages are available under the TCPA "in [the court's] discretion" "[i]f the court finds that the defendant willfully or knowingly violated [the TCPA] or the regulations prescribed under" the TCPA. 47 U.S.C. § 227(b)(3).

"Willfully" and "knowingly" are not defined by the TCPA, and the Second Circuit has not defined them. District courts in this Circuit repeatedly have held that "[i]n order for a defendant's conduct to be 'willful' or 'knowing' for purposes of treble damages under the TCPA, . . . bad faith is not necessarily required; rather, it is enough for a defendant to act with knowledge that the conduct violates the law." *Oparaji v. Home Retention Corp.*, No. 21 Civ. 2758, 2023 WL 7687217, at *4 (E.D.N.Y. Sept. 26, 2023), *report and recommendation adopted*, 2024 WL 2150338 (E.D.N.Y. May 14, 2024); *Santiago v. Merriman River Assocs., LLC*, No. 17 Civ. 2054, 2018 WL 2465358, at *5 (D. Conn. June 1, 2018) (collecting cases); *see also Rose v. New TSI Holdings, Inc.*, No. 21 Civ. 5519, 2022 WL 912967, at *3 (S.D.N.Y. Mar. 28, 2022) (A knowing or willful violation of the TCPA requires "evidence that a defendant was aware or should have been aware that it called an individual after he or she asked that the calls stop or that the defendant knew it was violating the TCPA but kept calling anyway.").

The burden of proof is on the Plaintiffs to prove that Defendant's conduct was willful and knowing. *See Martin v. Bottom Line Concepts, LLC*, No. 23 Civ. 8510, 2024 WL 1119982, at *9 (S.D.N.Y. Mar. 14, 2024) (noting that a plaintiff must "adduce evidence sufficient to support an award of treble damages"). Whether there even was a violation of the NDNCR regulations is a

question of fact, as discussed above. While a reasonable jury could find that Defendant did not inherit the HOM's established business relationship exempting it from the NDNCR regulation, the same jury might find that Defendant did inherit HOM's business relationship with Plaintiffs. In these circumstances, it is too much to say that Defendant should have been aware that it was violating the law. Nor have Plaintiffs pointed to evidence that Defendant subjectively believed that it was violating the law by contacting HOM's former customers. Based on the record evidence, no reasonable fact finder could find that Defendant's conduct was knowing or willful. Summary judgment is granted to Defendant on the claim for treble damages.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. For clarity, the surviving claim is a single cause of action combining Counts 2 and 3 and charging Defendant with contacting members of the previously certified NDNCR Class. As a matter of law, Defendant did not receive the requisite consent to contact members of the NDNCR class and may not raise that defense at trial.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 241.

Dated: September 19, 2024
         New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**