UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN WATSON, et al,
                                Plaintiffs,

                          20 Civ. 4572 (LGS)

                 -against-

                          ORDER

MANHATTAN LUXURY AUTOMOBILES, INC.,
                                Defendant,
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      WHEREAS the Opinion and Order dated September 19, 2024 (the "Opinion"), granted in part and denied in part Defendant's motion for summary judgment. Specifically, the Opinion denied summary judgment regarding a claim combining Plaintiffs' Counts 2 and 3 and charging Defendant with contacting members of the previously certified National Do-Not-Call Registry ("NDNCR") class. The Opinion held that as a matter of law, Defendant did not receive the requisite consent to contact members of the NDNCR class and may not raise that defense at trial.

      WHEREAS, Defendant timely moved for reconsideration of the Opinion, arguing that the Opinion misapplied relevant precedent regarding consent and, in the alternative, that Defendant should be allowed to raise the issue of consent at trial.

      WHEREAS, "[a] party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021).[1] "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, emphases, footnotes and citations are omitted, and all alterations are adopted.

the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*  The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009); *accord Suarez v. United States*, No. 17 Civ. 133, 2022 WL 1078436, at *2 (S.D.N.Y. Apr. 11, 2022).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *accord Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021).  "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020); *see also Suarez*, 2022 WL 1078436, at *2 ("A motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.").

WHEREAS, the motion for reconsideration is construed to seek reconsideration based on clear error.  However, the Opinion correctly concludes that as a matter of law, Plaintiffs did not provide their consent to be contacted by Defendant.

WHEREAS, Defendant first argues that under relevant caselaw, Plaintiff Espinal provided consent by signing two separate contracts, which, when read together, provide consent to be contacted by affiliates regarding service offers.  This argument was previously raised in Defendant's motion for summary judgment and rejected.  As explained in the Opinion, this is an impermissible interpretation of the documents.  Defendant is correct that *Gorss Motels, Inc. v. Lands' End, Inc.*, stands for the proposition that contractual provisions can transfer a customer's consent to be contacted to an affiliate.  997 F.3d. 470 (2d Cir. 2021).  However, that holding

2

relied on language in the contract that explicitly stated that the customer was consenting to receiving a specific type of messages and the same provision explained that the customer may be contacted by affiliates and not only by the business. *Id*. at 473, 481 (explaining plaintiff consented to contact by affiliates by signing a contract that stated, "We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf.").

WHEREAS, here, Defendant attempts to string together two separate documents, neither of which provide sufficient notice to constitute consent to be contacted. One document states that "we" -- i.e., Honda of Manhattan ("HOM") -- may contact the customer for various purposes and seeks consent for that contact. This document makes no mention of affiliates and gives no notice to a customer that their consent may be transferred to an entity other than HOM. The second document is a notice that merely informs the customer that HOM may disclose non-public information about customers to third parties and affiliates in certain circumstances. It does not include a customer's telephone number, does not explain that any of these third parties or affiliates may contact the customer, nor does it state what the third parties may do with the information. This document does not provide consent to be contacted by those affiliates, as it does not meet the requirement for consent under the regulation -- "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). These two documents cannot be read together to create consent to receive messages from affiliates like Defendant. Unlike in *Gorss*, in which the contract clearly stated that assistance may be offered by affiliates and made clear that assistance may arrive in the form of faxes, there is no provision that states that HOM may use affiliates to provide services to the

3

customer and that those affiliates may contact Plaintiffs.  The second document notifies the customer that third parties may receive the customer's non-public information; it gives no notice that those third parties may then use that information to contact the customer.

WHEREAS, Defendant also argues that the service warranty signed by Plaintiff Espinal provides consent to be contacted by affiliates, but Defendant never raised this argument previously despite having the opportunity to do so.  *Banister*, 590 U.S. at 508 ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued.").  Regardless, this disclosure is no different from that included in the second document discussed above: it states that HOM is authorized "to send [the customer's] Nonpublic Personal Information to Dealer Vendors."  As explained, this language is insufficient to provide consent to be contacted by affiliates like Defendant.

WHEREAS, Defendant argues that the issue of consent is a disputed issue of material fact that should be left to the jury.  Unlike in the cases cited by Defendant, there is insufficient evidence here to support the existence of consent as a matter of law.  In *Latner v. Mount Sinai Health System, Inc*, the plaintiff had "agreed that [defendant] could share his information for 'treatment' purposes, and the privacy notices stated that [defendant's facility] could use [plaintiff]'s information 'to recommend possible treatment alternatives or health-related benefits and services.'"  879 F.3d 52, 55 (2d Cir. 2018), *as amended* (Jan. 9, 2018).  The court held that plaintiff therefore had "provided his prior express consent to receiving a single text message about a 'health-related benefit' that might have been of interest to him."  *Id*.  The notices and contracts at issue in *Latner* advised the customer that he may receive messages from a specific entity for a specific purpose, and the customer's assent to those messages constituted consent. Likewise, in *Reyes v. Lincoln Automotive Financial Services*, plaintiff had signed a contract

4

including an express consent provision: "[plaintiff] also expressly consent and agree to Lessor [Ford], Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you." 861 F.3d 51, 53-54 (2d Cir. 2017), *as amended* (Aug. 21, 2017). The issue on appeal was whether plaintiff had adequately revoked that consent. The plaintiff testified at deposition that he had mailed a letter to defendant's P.O. box revoking consent, but the copy of the letter produced at deposition "did not bear an address or postmark and referenced an incorrect account number" and defendant argued it never received the letter or other request to revoke consent. *Id*. at 55. The court held that summary judgment on the lack of revocation was granted in error, because that decision rested on an "impermissible assessment by the court of [plaintiff]'s credibility." *Id*. Here, there is no express permission as a matter of law and no disputed issue of material fact. The documents speak for themselves without requiring factual assessments as to credibility. The meaning of an unambiguous contract is a question of law for the court. *See Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (federal common law); *accord Iota Shipholding Ltd. v. Starr Indem. & Liab. Co.*, No. 16 Civ. 488, 2017 WL 2374359, at *5 (S.D.N.Y. May 31, 2017) (federal common law).

      WHEREAS, Defendant argues that it should not be precluded from arguing at trial that consent was present because Plaintiffs did not seek to strike Defendant's affirmative defense of consent or independently move for summary judgment on that issue. "District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020). The key consideration in such circumstances is whether "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to

5

be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Id*.

WHEREAS, Defendant has had ample opportunity to show a material dispute of fact with respect to the issue of consent, including on this motion for reconsideration, but its efforts have been unsuccessful. Defendant raised the issue of consent in its motion for summary judgment and argued that summary judgment was warranted because Plaintiffs provided consent to be contacted. Plaintiffs' opposition and Defendant's reply to the motion also extensively discuss the issue of whether consent was present and the evidence available to the parties. Defendant made extensive arguments regarding the documents that purportedly demonstrate consent and argued against Plaintiffs' assertion that no consent existed. As a matter of law, the documents are insufficient to establish that Plaintiffs gave consent to be contacted as a matter of law.

WHEREAS, the additional arguments and documents that Defendant raises now to show consent -- the warranty document and contradictions between Plaintiff Espinal's declaration and testimony -- do not change the analysis. The warranty document again discloses information sharing between HOM and other parties but does not create consent for the customer to be contacted by those other parties. Plaintiff Espinal's testimony and declaration also do not alter the documents, which fail to establish consent. This argument regarding Espinal's credibility is raised for the first time in relation to consent, although Defendant had previously raised a similar argument regarding his NDNCR registration. Espinal's declaration states that he was required to sign the documents as a condition of purchasing his vehicle and that he chose to not check the box regarding sales messages because he did not want to consent to receiving those messages from HOM. Espinal's deposition testimony regarding the documents, excerpted in opposition to class certification and Defendant's motion for summary judgment, largely consists of statements

that he does not remember the documents he was shown. Neither the deposition testimony nor the declaration changes that the documents are unambiguous, and neither creates a dispute of fact that Espinal had any subjective understanding that he provided consent to be contacted. Defendant is free to raise to the jury Espinal's credibility on other issues, such as his NDNCR registration. Summary judgment on the issue of consent is appropriate in this circumstance to avoid confusing the jury with an issue that is foreclosed as a matter of law. It is hereby

**ORDERED** that Defendant's motion for reconsideration is **DENIED**.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 277.

Dated: October 9, 2024
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**