**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN WATSON, DANIEL SAMARGHITAN, ANNMARIE GREENE f/k/a ANNMARIE MOHAMMED, JOSE ESPINAL, LYMELL JACKSON, individually, and on behalf of all others similarly situated, | Case No.: 1:20-cv-04572-LGS<br>1:21-CV-01588-LGS<br><br>Hon. Lorna G. Schofield |
| Plaintiffs, | |
| v. | |
| MANHATTAN LUXURY AUTOMOBILES, INC. d/b/a/ LEXUS OF MANHATTAN, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO CLASS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................. 1

II.     NATURE AND HISTORY OF THE LITIGATION............................................................. 4

III.    SETTLEMENT NEGOTIATIONS ................................................................................... 6

    A.    Reaching Agreement As To Terms............................................................................. 6

    B.    Reaching Agreement As To Value ............................................................................. 8

    C.    Consideration of Other TCPA Settlement Figures ................................................... 9

IV.     SUMMARY OF THE TERMS OF THE SETTLEMENT ................................................ 10

    A.    The Proposed Rule 23(b)(3) Class.......................................................................... 10

    B.    Settlement Benefits ................................................................................................ 11

    C.    Costs of Notice....................................................................................................... 11

    D.    Service Award for Class Representative ................................................................. 11

    E.    Attorneys' Fees and Costs ...................................................................................... 12

    F.    Class Notice ........................................................................................................... 12

    G.    Cy Pres .................................................................................................................. 14

    H.    Release ................................................................................................................... 14

V.      ELEMENTS FOR  PRELIMINARY APPROVAL HAVE BEEN MET ........................... 15

    A.    The Legal Standard for Preliminary Approval ....................................................... 16

    B.    The Settlement is Fair, Adequate and Reasonable Under The Grinnell Factors ..... 18

1.    The Complexity, Expense, And Likely Duration Of The Litigation ............................ 18

2.    The Reaction of The Class To The Settlement ............................................................. 19

3.    The Stage of The Proceedings and The Amount of Discovery Completed ................. 20

4.    The Risks of Establishing Liability and Damages ...................................................... 20

5.    The Risk of Maintaining Class Action Status Through Trial ....................................... 21

6.    The Ability of Defendant to Withstand Greater Judgment ........................................... 22

7.    The Range of Reasonableness of The Settlement in Light of The Best Possible

Recovery and In Light of All The Attendant Risks of Litigation ........................................... 22

C.    The Settlement is Fair, Adequate and Reasonable Under The Rule 23(e)(2) Factors ...... 23

1.    Class Counsel and Plaintiffs Adequately Represented the Class ................................. 24

2.    The Settlement Was Negotiated at Arm's-Length ......................................................... 25

3.    The Settlement Provides Adequate Relief to The Class ............................................... 26

4.    The Settlement Treats All Class Members Equally ....................................................... 31

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................... 31

VII.    CONCLUSION .............................................................................................................. 33

## **TABLE OF AUTHORITIES**

Babcock v. C. Tech Collections, Inc., No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548

    (E.D.N.Y. 2017) ................................................................................................................ 30

Banyai v. Mazur, 2007 WL 927583 (S.D.N.Y. 2007). ............................................................ 20

Blondell v. Bouton, 2021 U.S. Dist. LEXIS 164292 (E.D.N.Y. 2021) .................................... 30

Bodon v. Domino's Pizza, LLC, 2015 WL 5886656 (E.D.N.Y. Jan. 2015). ............................ 23

Brecher v. Republic of Argentina, 806 F.3d 22 (2d Cir. 2015) ............................................... 15

Caddick v. Tasty Baking Co., 2021 WL 1374607 (E.D. Pa. 2021). .......................................... 33

Cavalieri v Gen. Elec. Co., 2009 WL 2426001 (N.D.N.Y. 2009) ............................................ 25

Charron v Pinnacle Group N.Y. LLC, 874 F. Supp. 2d 179 (S.D.N.Y 2012) ......................... 32

Charron v Wiener, 731 F.3d 241 (2d Cir 2013). ...................................................................... 32

Charvat v. Valente, No. 12-cv-05746, 2019 U.S. Dist. LEXIS 187225 (N.D. Ill.) ...................... 9

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974). ............................................... 17

Cruz v Sal-Mark Rest. Corp., 2019 WL 355334 (N.D.N.Y. 2019) .......................................... 22

D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001). ................................................... 20, 25

Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231 (E.D.N.Y. 2010). ............................ 18

Elliot v. Leatherstocking Corp., 2012 WL 6024572 (N.D.N.Y. 2012). .................................... 18

Frederick Luster v. Wells Fargo Dealer Services Inc.,

Case No. 1:15-cv-01058-TWT (N.D. Ga.) ................................................................................ 9

Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424 (S.D.N.Y. 2014) ........................................ 33

Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000). ...................................... 30

In re "Agent Orange" Prod Liab. Litig., 597 F. Supp. 740 (E.D.N.Y.1984) .............................. 26

In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............. 22

In re Facebook, Inc., 822 Fed Appx 40 (2d Cir 2020)................................................... 23

In re Facebook, Inc., IPO Sec. and Derivative Litig.,

343 F. Supp. 3d 394 (S.D.N.Y 2018)................................................................. 22,23

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,

55 F.3d 768 (3d Cir. 1995)........................................................................... 25

In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) ......................... 23

In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). ........................ 28

In re Hudson's Bay Co. Data Sec. Incident Consumer Litig., 2022 U.S. Dist. LEXIS 102805, at

*40 (S.D.N.Y. 2022). ........................................................................ 29. 33, 34

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11 (E.D.N.Y.

2019)....................................................................... 18, 21, 26, 27, 35

In re Platinum & Palladium Commodities Litig., No. IO-CV-3617, 2015 U.S. Dist. LEXIS

98691, 2015 WL 4560206, at *3 (S.D.N.Y. 2015) ................................................... 33

In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283 (3d Cir.1998) ...................... 19

In re Sinus Buster Prods. Consumer Litig., 2014 WL 5819921 (E.D.N.Y. 2014). ...................... 24

In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d at 634 ................................................. 18

In re Vitamin C Antitrust Litig., No. 06– MD–1738 (BMC)(JO), 2021 WL 5289514, at *6

(E.D.N.Y. 2012) ................................................................................. 24

In re Warner Chilcott Ltd. Sec. Litig., 2008 WL 5110904 (S.D.N.Y. 2008) ............................. 21

Joel A. v Giuliani, 218 F3d 132 (2d Cir 2000) ...................................................... 16

Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................. 19, 36

Mills v. Capital One, N.A., 2015 WL 5730008 (S.D.N.Y. 2015) ................................... 24

Newman v. Stein, 464 F.2d 689 (2d Cir.1972) ...................................................... 25

Nnebe v. Daus, 2025 U.S. Dist. LEXIS 87399 (S.D.N.Y. 2025). .................................................. 27

Reyes v. City of Rye, 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. 2017) ..................................... 33

Seekamp v. It's Huge, Inc., No. 1:09-CV-0018 (LEK/CFH), 2014 U.S. Dist. LEXIS 174657

    (N.D.N.Y. 2014)............................................................................................................................ 34

Shapiro v JPMorgan Chase & Co., 2014 WL 1224666 (S.D.N.Y. 2014) .................................... 25

Soular, et al. v. Northern Tier Energy LP, et al., Case No. 0:15-cv-00556-SRN-KMM (S.D.

    Minn)............................................................................................................................................. 9

Tannlund v. Real Time Resolutions Inc., Case No. 1:14-cv-05149 (N.D. Ill.) ............................ 9

Vargas v. Capital One Fin. Advisors, 559 F. App'x 22 (2d Cir. 2014). ....................................... 36

Wal-Mart Stores v. Visa U.S.A., 396 F.3d 96 (2d Cir. 2005) .................................... 16, 18, 25, 37

Warfarin Sodium Antitrust Litig., 391 F.3d 516 (3d Cir. 2004)................................................... 16

## I.    __INTRODUCTION__

Plaintiff Jose Espinal, individually and on behalf of all others similarly situated, by and through counsel, respectfully submits this memorandum of law in support of the Joint Motion for Preliminary Approval of Class Action Settlement, and moves the Court for preliminary approval of a settlement of this class action as set forth in the Settlement Agreement ("Settlement Agreement") attached as Exhibit 1, and to approve the proposed form of notices to the Classes.[1] Defendant Lexus of Manhattan ("LOM") joins in this Motion. The parties  also submit: the proposed Class Notices of Settlement attached as Exhibits 2 and 3 (collectively, the "Settlement Notices"); the proposed Order of Preliminary Approval (Exhibit 4); and, a proposed Final Approval Order (Exhibit 5).

At this case's inception, Plaintiff sought to certify three classes: an internal do not call class (IDNC), an automatic telephone dialing system class (ATDS), and a National Do Not Call Registry class (NDNCR). At the class certification briefing, the Court dismissed the IDNC class based on lack of Article III standing, and appointed Jose Espinal as the class representative of the NDNCR Class and ATDS Class. On summary judgment, the Court dismissed the ATDS class claims on the merits and the claim for treble damages in their entirety; thereby, leaving only the NDNCR class to proceed on their claims to trial. The instant settlement will resolve all outstanding claims of the NDNCR class ("NDNCR Class" or "Payment Class"), and the ATDS class members ("ATDS Class" or "Notice Class") (hereinafter, the NDNCR/Payment Class and the ATDS/Notice Class are collectively referred to as the "Settlement Class"). Encompassed within the Settlement Agreement is payment to all NDNCR class members, notice to all ATDS class members

---

[1] The NDNCR Class and ATDS Class are each defined in the Settlement Agreement as the Class of consumers certified by this Court's Order of September 29, 2022 (ECF Doc. No. 190).

concerning their remaining rights, including the waiver of their right to appeal dismissal of their claims on the merits, attorney's fees, litigation costs, notice costs and a service award to the lead named Plaintiff, Jose Espinal.

The parties' settlement satisfies the relatively low threshold required for preliminary approval. As set forth in the Settlement Agreement, the settlement has a total value of $695,000 (the "Settlement Fund"). The parties reached the terms of the settlement after significant arm's-length negotiations between Plaintiff and LOM (together, the "Settling Parties") and their respective counsel, including multiple settlement conferences and discussions with Magistrate Judge Sarah L. Cave. After a thorough investigation of the facts and analysis of applicable law, the Settling Parties and their counsel submit that the terms of the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Settlement Class. The proposed Settlement Agreement provides significant benefits to the Settlement Class, offering both monetary relief and notice of rights to its members, while avoiding the delay and risks inherent in continued litigation, including the possibility that a Court or jury may find that LOM is not liable to the Settlement Class or award even less damages than that achieved through settlement. Under these circumstances, the proposed settlement is the best means to ensure that members of the Settlement Class receive significant relief promptly and efficiently, and without the risks inherent in furthering this litigation to trial and/or appeal.

As a class settlement under Rule 23(b)(3), the proposed Settlement Agreement requires court approval that its terms are fair, reasonable, and adequate for the class, including (1) preliminary approval of the proposed Settlement Agreement and Settlement Class; (2) dissemination of notice to the class; and (3) a formal fairness hearing to determine whether the Court should grant final approval of the proposed Settlement Agreement. *See* Rule 23(e).

2

As set forth in the Settlement Agreement, the Settling Parties have prepared two draft Settlement Notices, one for ATDS class members (Ex. 2) and one for NDNCR class members (Ex. 3). The Settlement Notices will also be posted on a previously approved, pre-existing website updating advising Settlement Class members of the settlement, together with other information about the settlement. The proposed Notices and the plan for their dissemination are designed to satisfy due process requirements by apprising members of the Settlement Class of the proposed Settlement Agreement and advising them of their associated legal rights under the Settlement Agreement.

Plaintiff, together with LOM, requests that the Court enter the proposed Preliminary Approval Order (Ex. 4) that would:

1. Grant preliminary approval of the proposed settlement in the amount of Six Hundred Ninety-Five Thousand Dollars ($695,000.00), on behalf of the Settlement Class Members according to the terms of the parties' Settlement Agreement;

2. Approve the form, substance, and distribution of the proposed Settlement Notices ("Notices");

3. Preliminarily approve the manner of distribution of the Settlement Fund;

4. Appoint Class Settlement as the Settlement Administrator for purposes of administering the Notices and Settlement Program;

5. Set deadlines and procedures for persons who fall within the previously ordered class definitions to exclude themselves or object to the proposed Settlement Agreement; and

6. Set a date for the Final Approval Hearing to determine whether the Proposed Settlement Agreement should be granted final approval.

## II.    NATURE AND HISTORY OF THE LITIGATION

On June 15, 2020, Plaintiff, Jose Espinal, commenced suit individually and on behalf of a putative classes against LOM, seeking alleged damages for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* and the regulations promulgated thereunder ("TCPA") (hereinafter, the "Lawsuit"). The Complaint, in the Lawsuit, alleged that LOM sent text messages to Honda of Manhattan ("HOM") customers, who allegedly did not provide consent to LOM to send any text messages relating to service, maintenance, or inspection of the HOM customer's respective Honda vehicles.   While Plaintiff alleged a number of claims in the Complaint, the relevant claims, for purposes of settlement, alleged that LOM placed repeated unsolicited text messages to phone numbers that were registered on the National Do Not Call Registry—all without securing express consent or any other basis for such contact, as well as LOM sending text messages from an automatic telephone dialer system. Plaintiff alleged that such conduct violated the TCPA. (ECF Doc. Nos. 1, 30).[2] Defendant denied all such allegations and claims that text messages sent by LOM to its affiliate and sister dealership's customers violated the TCPA. (ECF Doc. No. 26, 39)

Plaintiff subsequently filed a Motion for Class Certification on October 26, 2020. [ECF Doc. No. 36]. Following completion of certain discovery, Defendant filed an Opposition to Class Certification on December 18, 2020. [ECF Doc. No. 61]. Following this, the briefing was stayed due to the need to complete outstanding expert and third-party discovery and consolidate cases.[3] Plaintiff ultimately filed a Second and Third Amended Complaint to include an additional named

---

[2] Plaintiff subsequently filed an Amended Complaint on October 17, 2020 (ECF 30), adding additional allegations against LOM and adding Plaintiffs AnnMarie Greene and Jose Espinal, the current class representative.

[3] The initial case, *Watson v. Lexus of Manhattan*, Case No. 1:20-cv-11036-LGS was consolidated with a state court action involving the same facts and circumstances brought by AnnMarie Greene, which was subsequently removed to the Southern District and assigned Case No. 1:21-cv-01588-LGS. All pleadings and consolidated pleadings are encompassed in the Settlement Agreement and incorporated into the ""Litigation"

Plaintiff Lymell Jackson in 2021. [ECF Doc. No. 101, 104]. Given these changes to the initial Complaint and the need to conduct additional discovery, the class certification motion was terminated from the docket. [ECF Doc. No. 42]. Plaintiff re-filed the motion to certify the three classes on November 9, 2020. [ECF Doc. No. 46]. LOM filed its opposition to class certification on December 18, 2020. [ECF Doc. Nos. 61-64]. On January 25, 2021, this Court stayed the motion to certify. [ECF Doc. No. 86]. On February 2, 2021, the Court denied Plaintiff's motion for class certification without prejudice to renew by April 30, 2021. [ECF Doc. No. 89]. Plaintiff ultimately refiled the motion to certify on March 14, 2022. [ECF Doc. No. 164]. LOM opposed the motion for class certification on May 5, 2022. [ECF Doc. Nos. 178-179]. Plaintiff filed reply and the motion was fully briefed as of July 5, 2022. [ECF Doc. No. 187]. On September 29, 2022, the Court issued an Opinion and Order [ECF 190], granting class certification, in part, to Plaintiff's ATDS and NDNCR Classes, and denied the motion in part, dismissing the IDNC class based on a lack of Article III standing. Thereafter, Defendant filed a Motion for Reconsideration limited to the Court's ruling on the certification of the NDNCR Class, which was denied on October 14, 2022. [ECF 197]. Defendant appealed a limited portion of the September 29, 2022 Opinion and Order relating to the NDNCR Class to the Second Circuit on October 17, 2022; however, leave to appeal at that time was denied as premature. [ECF 213]. Following notice to the ATDS Class and NDNCR Class, Defendant timely filed a Motion for Summary Judgment on December 15, 2023. [ECF Doc. No. 241]. Following the complete briefing of the motion, on September 19, 2024, the Court issued an Opinion and Order granting Defendant's Motion for Summary Judgment in part by dismissing Plaintiff's ATDS claims and claims for treble damages in their entirety, and denied the motion in part, by determining a question of fact exists for a jury to decide the Plaintiff's alleged NDNCR claims. [ECF Doc. No. 270]. Defendant moved for a limited motion for

reconsideration of the Court's Order, but the requested relief was denied. [ECF Doc. Nos. 279, 280]. The remaining NDNCR class claim was subsequently scheduled to proceed to trial in February 2025. In January 2025, the parties were able to reach a settlement of the remaining claims, with the assistance of Magistrate Judge Sarah Cave. However, as the parties were negotiating and memorializing the draft agreement, various issues – although amicable - arose necessitating further settlement discussions and conferences before Judge Cave, leading to a final settlement agreement in June 2025. Through settlement, the parties have been able to save judicial time and resources by avoiding the need for trial.

### III.    SETTLEMENT NEGOTIATIONS

#### A.  Reaching Agreement As To Terms

The proposed Settlement Agreement was achieved as a result of extensive arm's-length negotiations between the Settling Parties and counsel, through the assistance and facilitation of Magistrate Judge Sarah Cave. The parties first engaged in a formal settlement conference before Magistrate Judge Cave on March 13, 2023; however, this conference proved unsuccessful.

In October 2024, Magistrate Judge Sarah Cave held an informal conference encouraging the parties to readdress the possibility of settlement as the parties began to prepare for trial and the issues previously before the Court in March 2023 were fewer as a result of the Court's summary judgment decision.

Follow-up settlement conferences were held with Magistrate Judge Cave in 2025 on the following dates: January 24, January 29, April 29, May 6, May 13, May 22,  and May 29. A final settlement conference was scheduled to be heard on June 5, 2025 [ECF Doc. No. 392], however, the Settling Parties achieved a final agreement to all terms on June 4, 2025 and advised the Court. [ECF Doc. No. 395].

The parties have vigorously litigated the claims. Before and during these settlement discussions, the Settling Parties had arm's-length exchanges of sufficient information to permit Plaintiff and his counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. Through extensive research, investigation, and fact discovery during this litigation, the parties have thoroughly investigated and analyzed all relevant factual and legal issues, assessed the strengths and weaknesses of their claims and defenses, and concluded thereby that the proposed Settlement Agreement is fair, reasonable, and adequate for the Settlement Class as a whole. The Parties did not negotiate Attorneys' Fees as part of the settlement negotiations, at all, other than to agree that LOM will not oppose Plaintiff's application for Attorneys' Fees and leave Plaintiff to his proofs. The parties thereafter worked towards drafting and finalizing the proposed Settlement Agreement, which is summarized below, and annexed as Exhibit 1.

LOM denies all Plaintiff's allegations and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation.

Plaintiff's Counsel, in assessing the merits of the proposed Settlement Agreement, considered the risks and uncertainties of ultimately prevailing at trial, and potential appeal, in light of various factors. As with any litigated case, Plaintiff and the Settlement Class Members face an uncertain outcome at trial, including the risk of enforcing a judgment to satisfy the hundreds of claims asserted against LOM. The proposed Settlement Agreement eliminates the attendant risks of litigation by providing Plaintiff and the Settlement Class a substantial and certain recovery of valuable benefits in a timely manner and avoiding further delay and the risk of loss that might result from further litigation, trial, and appeals. For these reasons discussed below, the proposed

7

Settlement Agreement satisfies all of the prerequisites for preliminary approval and certification of the Settlement Class.

      B.  <u>Reaching Agreement As To Value</u>

      The total settlement value is $695,000. The Settling Parties believe it is important for the Court to understand how the parties reached agreement on this settlement value. The issues remaining for trial were a jury's determination on purported liability and damages relating to the alleged NDNCR class claim. In total, the NDNCR class has 418 class members, who received a total of 1,255 text messages from LOM. The Settling Parties had significant disputes as to statutory interpretation of the alleged damages that could be recovered at trial, which the Court resolved on January 24, 2025. [ECF Doc. No. 373]. The Parties also disputed which of the 1,255 text messages the NDNCR class could request compensation for in the event liability was determined by the jury. It was Plaintiff's position that a full recovery under the statute would result in a maximum recovery of $627,500. Additionally, Plaintiff believed that he could also seek reimbursement for the litigation costs incurred which totaled $162,598.63. Plaintiff's position concluded that there could be a total recovery of $790.095.63. Even further, although the ATDS claims were dismissed on the merits following Defendant's motion for summary judgment, the Parties discussed Plaintiff's intent to appeal these claims, and Defendant's desire for conclusion as to these ATDS class claims as well as the remaining NDNCR claims, and as a result, came to a compromise and final settlement amount valued at $695,000, wherein payments would only be made to the active class, *i.e.* the NDNCR class, while the ATDS class members would receive notice of their claim's dismissal on the merits, Plaintiff's waiver of the right to appeal the dismissed ATDS Class claims, and each respective ATDS class members' right to exclude themselves from the settlement to independently appeal the claims, if they desired to do so.

From the Settlement Fund, each NDNCR class member will receive $250 with the remainder going to cover litigation costs, a service award, and reasonable attorney's fees.

C.  Consideration of Other TCPA Settlement Figures

In reviewing the negotiations described above, it is important to look at other TCPA class settlements. As can be shown by these representative cases, many class actions result in only a nominal amount for the class members. In *Tannlund v. Real Time Resolutions Inc.*, Case No. 1:14-cv-05149, in the U.S. District Court for the Northern District of Illinois, Eastern Division, consumers who received unsolicited calls from the Defendant received approximately $46 per consumer. In *Frederick Luster v. Wells Fargo Dealer Services Inc.*, Case No. 1:15-cv-01058-TWT, in the U.S. District Court for the Northern District of Georgia, consumers who received calls or text messages from Defendant regarding an automobile retail installment contract received settlement of approximately $24 in two payments following a 15.7 million dollar settlement. In *Soular, et al. v. Northern Tier Energy LP, et al.*, Case No. 0:15-cv-00556-SRN-KMM, in the U.S. District Court for the District of Minnesota, consumers who received promotional messages from Defendant without prior written consent, were awarded $50 in cash and $50 in SuperAmerica gift cards for settlement of the case from a $3.5 million dollar settlement. Finally, in *Charvat v. Valente*, No. 12-cv-05746, 2019 U.S. Dist. LEXIS 187225 in the Northern District of Illinois, consumers who received robocalls from three different cruise lines through a third party, and with a 12.5 million dollar settlement, the final average amount per claimant was approximately $22. Given the large settlement amounts in these settlements and the nominal amounts received by each consumer, Plaintiff's ability to obtain a $250 settlement for each class member in light of a Settlement Fund of only $695,000 should be found to be a significant and appropriate recovery.

## IV.    <u>SUMMARY OF THE TERMS OF THE SETTLEMENT</u>

Representative Plaintiff Espinal and LOM have agreed, subject to this Court's approval, to
a settle this litigation on a class-wide basis. The terms of the settlement are set out in the
Settlement Agreement filed simultaneously herewith as Exhibit 1. The Settlement Agreement
defines the Settlement Class, describes the Parties agreed upon exchange of consideration, and
proposes a plan for disseminating notices and administering claims for the Settlement Class
Members. The settlement is fair, reasonable and sound in light of the relevant facts, the applicable
law, and the benefits conferred by the settlement to the Class.

### A.    <u>The Proposed Rule 23(b)(3) Class</u>

The Parties agree to certify a nationwide "Settlement Class" for settlement purposes, as
certified by the Court. The Settlement Class consists of two classes, both the certified ATDS
Class and the NDNCR Class, defined as:

NDNCR Class:    All Honda of Manhattan customers within the United States that
were sent two or more text messages from Defendant within a 12
month period, using the Zipwhip texting platform, stating "Can I
text you regarding maintenance of your Honda vehicle" or a similar
variant thereof, to non-business wireless telephone numbers, whose
telephone numbers were registered on the NDNCR more than thirty-
two days before the first message was sent, within four years of the
filing of this action.

ATDS Class:    All HOM customers within the United States that were sent any text
messages from Defendant, using the Zipwhip texting platform,
stating "Can I text you regarding maintenance of your Honda
vehicle" or a similar variant thereof, to nonbusiness wireless
telephone numbers, within four years of the filing of this action.

[ECF 190]. There are 418 members of the NDNCR class per the court-approved class
definition. There are 3,974 members of the ATDS class.

B.  Settlement Benefits

The proposed Settlement Agreement provides for a monetary settlement of Six Hundred Ninety Five Thousand Dollars ($695,000.00) to be allocated among the NDNCR Class Members through a claims process to be administered by the court-appointed Settlement Administrator, which will be exhausted to pay all Class Members, as well as any Attorneys' Fee Award and Costs, and a Service Award. The proposed Settlement Agreement further provides for notice of rights to be sent to all ATDS Class members, informing them of their waiver of an appeal to the dismissal of the claims on the merits,  their right to object and/or opt out from settlement, and their right to independently appeal their ATDS claim. The settlement will completely resolve the litigation of all ATDS and NDNCR Class Claims brought in the Litigation as to LOM, permitting the Court to dismiss said claims with prejudice if the settlement is approved following the Final Approval Hearing.

C.  Costs of Notice

The proposed Settlement Agreement provides that the costs to administer the settlement are to be paid by LOM separate and apart from the Settlement Fund, with unclaimed checks and residuals from the Settlement Fund, going into a *cy pres* fund to benefit New York Legal Assistance Group. *See* Ex. 1, Settlement Agreement. All of these measures ensure that no portion of the Settlement Funds will revert to LOM.

D.  Service Award for Class Representative

 The Settling Parties have agreed that the Class Representative, Jose Espinal, subject to the approval of the Court upon motion filed no later than five (5) days prior to the Final Approval Hearing, will be paid a Service Award of $10,000 by LOM, and to which LOM will not object. *See* Ex. 1. The Service Award is to be deducted from the Settlement Fund.

E.   Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, LOM agrees not to oppose Plaintiff's request for reasonable attorneys' fees and expenses, to be reduced from the Settlement Fund, and subject to approval of the Court upon motion filed not later than five (5) days prior to the Final Approval Hearing. *Id*. The negotiations did not involve the amount of Attorney's Fees to be awarded to Plaintiff's Counsel, but rather only determined the total amount of the Settlement Fund as a whole that is to encompass a Service Award, Attorneys' Costs, Attorneys' Fees, and payment of the balance to the Settlement Class. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.7 (2004), available at http://www.fjc.gov ("MANUAL"). ("simultaneous negotiation of class relief and attorney fees creates a potential conflict. Separate negotiation of the class settlement before an agreement on fees is generally preferable"). *See also* Court Awarded Attorney Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 269 (1985) (calling for allowing parties to enter into a conditional settlement pending resolution of fees and for parties to seek court's permission before discussing fees). LOM leaves Plaintiff to his proofs for any approval of the Court related to reasonable attorneys' fees and expenses.

F.   Class Notices

The Settlement Agreement provides for the proposed Class Notices and settlement claims procedure to be administered by a neutral Settlement Administrator, Class Settlement, located at 20 Max Avenue, Hicksville, New York 11801, who is responsible for disseminating the Class Notices, overseeing the Settlement Website[4], receiving Opt-Out requests and Objections, reviewing and evaluating claims, allocating individual awards to class members, and distributing settlement proceeds to approved claimants. A summary of the proposed timetable for the notice

---

[4] Lexusofmanhattanclassaction.com

and administration process is detailed further below.

The Settlement Agreement provides for dissemination of two distinct notices. One notice will be sent to members of the NDNCR Class advising them of their rights to accept the Class Settlement Funds. And, a second notice to the ATDS Class advising them that their claims have been dismissed in their entirety on summary judgment and as a part of this settlement, an appeal of the dismissal on the merits is being waived. The notice to the ATDS Class will also advise the class members that they have the right to independently appeal, if they so wish, by opting out of the settlement and filing an appeal within 30 days of the entry of judgment in this action. The Settling Parties anticipate that the notices of the Proposed Class Action Settlement (Exhibits 2 and 3) will be distributed within 20 business days of entry of the Preliminary Approval Order. The Plaintiff shall provide LOM and the Settlement Administrator with the Class Notice Lists, which will include the names and last known postal addresses belonging to NDNCR and ATDS Class Members. The Settlement Administrator shall ensure that the information is secured and managed in such a way as to protect the security and confidentiality of the information, consistent with the applicable law.

Shortly after receiving the Class Lists, the Settlement Administrator will send the Notices via U.S. Mail. The Settlement Notices will provide NDNCR and ATDS Class Members with pertinent information regarding the Settlement Agreement, direct them to the Settlement Website, and show contact information for Class Counsel. The Settlement Notices shall advise the Settlement Class Members of their rights under the Settlement Agreement, including the procedures specifying how to request exclusion from the Settlement Agreement or submit an objection to the Settlement Agreement.

On the date of issuance of the Settlement Notices, the Settlement Administrator or the

Settling Parties shall post to the Settlement Website, which will include the Settlement Agreement, the Settlement Notices, relevant pleadings and Court orders regarding the Settlement Agreement. Contact information for the Settlement Administrator, as well as Settlement Class Counsel's contact information will also be provided.

The form and method of the Class Notices agreed to by the Settling Parties satisfies all due process considerations and meets the requirements of Rule 23(e)(1)(B). The proposed Class Notices describes plainly: (i) the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval Hearing; (iii) how the recipients of the Class Notice may object to the Settlement; (iv) the nature and extent of the release of claims; (v) the procedure and timing for objecting to the Settlement; and (vi) the form and methods by which Class Member may either participate in or exclude themselves from the Settlement. (Exhibits 2 and 3).

G. Cy Pres

The Settlement Agreement provides that unused funds or uncashed checks will be paid to a *cy pres* recipient, New York Legal Assistance Group, and not revert to LOM. *Ex. 1*. To the extent checks sent to Settlement Class Members are returned to the Settlement Administrator, or not cashed within 60 days after the date of issue, any residual will be distributed to the proposed *cy pres* recipient. *Id.* at section  IV ¶58

H. Release

The Settlement Agreement, upon final approval, provides that Settlement Class Members shall forever release Defendant LOM from any and all ATDS and NDNCR claims that were asserted or that could have been asserted in the Lawsuit. The parties have agreed that  nothing  in  the Settlement  Agreement  shall  be  construed  to  preclude  any  class  member  from  asserting  claims or  defenses  against  LOM,  other  than  the  claims  specifically  released  in  the  Settlement

14

Agreement.

## V.     ELEMENTS FOR  PRELIMINARY APPROVAL HAVE BEEN MET

This Court has already ruled that the NDNCR Class and ATDS Class may be certified, with Mr. Espinal as Class Representative for each, and his lawyers as Class Counsel. *See* [ECF 190]. As such, all the elements for certification of the Settlement Class for whom the case is being settled have been met. Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Where class certification is sought pursuant to Rule 23(b)(3), a plaintiff must also show (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Second Circuit also recognizes "'an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Argentina,* 806 F.3d 22, 24 (2d Cir. 2015).

Further, courts emphasize the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citing 4 NEWBERG § 11:41, at 87); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"). As remarked by the Second Circuit:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.

*Wal-Mart Stores*, 396 F.3d at 116. A district court's decision to approve a class settlement is given considerable deference. *See Joel A. v Giuliani*, 218 F3d 132, 139 (2d Cir 2000) ("The trial judge's views are accorded 'great weight … because he is exposed to the litigants, and their strategies, positions and proofs.... Simply stated, he is on the firing line and can evaluate the action accordingly.'"). Here, preliminary approval of the proposed Settlement Agreement is appropriate as it satisfies all relevant criteria. Accordingly, Plaintiff requests that the Court grant the requested relief.

A.  <u>The Legal Standard for Preliminary Approval</u>

The 2018 amendments to Rule 23 enumerate four principal factors to be considered by the Court as part of the "fair, reasonable, and adequate" inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *See* Rule 23(e)(2). Specifically, Rule 23(e)(2) provides that final approval of a class settlement requires:

> (2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>   (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>     (i) the costs, risks, and delay of trial and appeal;
>
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>     (iv) any agreement required to be identified under Rule 23(e)(3); and

16

(D) the proposal treats class members equitably relative to each other.

*See*, Rule 23(e)(2) (effective December 1, 2018).

Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under the nine-factor test enunciated in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), known as the *Grinnell* factors. The courts have made clear however that the "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id*. Accordingly, an analysis of the *Grinnell* factors is warranted as well.

The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery;
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See,* 495 F.2d at 463 (citations omitted); *see also Wal-Mart Stores*, 396 F.3d at 116 (applying *Grinnell* factors). At the preliminary approval stage, a court need not address every factor; and the determinative inquiry is whether the proposed settlement appears sufficiently fair, reasonable and adequate. *See In re Traffic Exec. Ass'n E. R.Rs*., 627 F.2d at 634 (noting that preliminary approval is a "determination" of whether there "might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"). Here, the proposed Settlement is fair on both procedural and substantive grounds.

B.  <u>The Settlement is Fair, Adequate and Reasonable Under The Grinnell Factors</u>

1.  <u>The Complexity, Expense, and Likely Duration of The Litigation</u>

Settlements are favored in class actions, which "'are generally complex … and consume tremendous time and financial resources.'" *Elliot v. Leatherstocking Corp.,* 2012 WL 6024572, at *4 (N.D.N.Y. Dec. 4, 2012). "Litigation through trial would be complex, expensive, and long. Therefore, the first factor weighs in favor of final approval." *Cruz v Sal-Mark Rest. Corp.,* 2019 WL 355334, at *4 (N.D.N.Y. Jan. 28, 2019); *see also In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 318 (3d Cir.1998) (stating that a settlement is favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010).

The instant case presents a complex case. Throughout the Litigation, there were a host of disputed legal and factual issues. Even after years of motions being adjudicated, disputes as to law and fact remain for both the Court and a jury to decide. Issues remaining, even now, include the ability to establish the elements of the claim, along with the consent defense, and the established business relationship defense. This would have entailed an analysis of the corporate affiliation between the ownership of Honda of Manhattan ("HOM"), Lexus of Manhattan ("LOM"), the relation between these two entities, and the expectations of consumers as to this relationship. These questions would have consumed days of testimony hearing from two employees of LOM, the President of LOM, the President of HOM, each of the five named plaintiffs, the president of

BRAM—another affiliated entity, and representatives from the Federal Trade Commission. After such an analysis, the jury would have needed to determine whether there was express contractual consent obtained from each NDNCR class member by HOM and appropriately transferred or applied to LOM. The jury would then need to analyze the text messages to determine whether they were solicitations as defined by the law. Finally, if liability was determined, the jury would then have needed to assess a damage valuation for compensation to Plaintiff and the NDNCR Class, if any. In addition to these trial complexities, at the time of settlement, more than a dozen motions *in limine* were outstanding on a range of issues for the Court to decide which could have gone in favor of Plaintiff or Defendant. On top of this, the parties' desire to appeal specific rulings also increased the complexity of the case. In all, settlement was advantageous to both sides; the complexity of the case favors approval of the Settlement Agreement.

The expense and duration of litigation also favor approval. Both parties were anticipating, at a minimum, five days of trial. This would have come with significant attorneys' fees and expenses in preparing eight fact witnesses, as well as the costs and expense for four expert witnesses to travel from out-of-state to attend and testify at trial. Not to mention the judicial resources that such a lengthy trial would have consumed. Further, although trial would have resolved claims within only a short period of time remaining, both parties anticipated potential appeals which would have delayed this process, likely by a year. Accordingly, the first *Grinnell* factor heavily weighs approval.

2. The Reaction of The Class To The Settlement

Class Notices have not yet been disseminated. Consequently, Settlement Class Members have not yet had the opportunity to consider or opine on the Settlement. As such, it is premature to address the reaction of the Settlement Class at the preliminary approval stage. *In re Warner*

19

*Chilcott Ltd. Sec. Litig.,* 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008). However, the Settlement Class has been previously notified as to the class certification, without any opt outs or objections. This indicates that the second *Grinnell* factor, slightly favors approval. Class Counsel will address this factor at the Final Approval Hearing, but Class Counsel and Class Representative Espinal fully support the Settlement.

### 3.  The Stage of The Proceedings and The Amount of Discovery Completed

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . .and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013). This factor easily supports approval by a look at the docket. Both parties spent years combing through discovery and presenting numerous legal issues to the Court for adjudication. Both the Class Plaintiff, Espinal,  and the Court have sufficient information to review this Settlement Agreement.

### 4.  The Risks of Establishing Liability and Damages

"[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. 2007). In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom., *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Plaintiff and Class Counsel are confident in the strength of their case, but they are also pragmatic about the risks inherent to litigation and establishing liability and damages at trial. Defendant continues to deny Plaintiff's allegations, and should this matter proceed, Plaintiff expects Defendant will vigorously defend

itself on the merits, at trial and likely on appeal. "Those risks include [] an unfavorable outcome at trial, and lengthy appeals even if Plaintiffs prevailed. Such risks could limit recovery, or eliminate it altogether." *In re Facebook, Inc., IPO Sec. and Derivative Litig.,* 343 F. Supp. 3d 394, 412 (S.D.N.Y 2018), *aff'd sub nom. In re Facebook, Inc.,* 822 Fed Appx 40 (2d Cir 2020).

The risk of establishing greater damages is also an important factor that weighs in favor of approval. As articulated above, because only 418 NDNCR class members were proceeding to trial, concerning compensation for 1255 text messages, the absolute largest amount of recoverable damages would have been $627,500 (excluding costs and reasonable attorneys' fees). However, this assumes that the NDNCR class members could be compensated for each text message (a matter disputed between the parties), and that the class would obtain an award of $500 per text message. However, as the Court clearly held, the statutory damage amount per text message ranged between $1.00 and $500.00. [ECF Doc. No. 373]. Accordingly, this settlement yields an extremely high percentage when perceiving the Class's best day in court *and* removes all risk.[5] Thus, this factor strongly favors class approval.

### 5.    The Risk of Maintaining Class Action Status Through Trial

As noted above, uncertainties exist regarding what could unfold at trial and the risk of recovery for the Payment Class members, including the risk of Defendant seeking decertification at trial, or on appeal, which allows this factor to weigh in favor of preliminary approval. *See In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (concluding an "appreciable risk to the class members' potential for recovery" should defendants contest class certification, including the risk of decertification at a later stage in the litigation); *Mills v. Capital*

---

[5] For context, the parties reached a settlement beyond the $627,500 maximum on the basis of the fact that the parties were aware of the significant costs incurred, and that based on attorney's fees to be sought, the class fund needed to be adequately large to ensure a significant recovery for each class member.

*One, N.A.,* 2015 WL 5730008, at *14 (S.D.N.Y. Sept. 30, 2015) ("[V]ictory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position."). One example of such a risk, which Defendant had raised prior to trial and within its' motions *in limine*, was whether there was sufficient evidence to establish that Mr. Espinal's cellular telephone number was even registered on the NDNCR at the time he received the two text messages. This presented clear class-wide risk, which again, was previously recognized by the Court, when asking counsel whether there would be a back-up named class plaintiff in the event that Defendant successfully established a lack of standing. Accordingly, this factor favors the settlement as well.

### 6.    The Ability of Defendant to Withstand Greater Judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.,* 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014). Thus, Defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *See In re Vitamin C Antitrust Litig.,* No. 06– MD–1738 (BMC)(JO), 2021 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement."). Although LOM may have the ability to withstand a greater judgment, the result achieved by Class Counsel—a $695,000 settlement for a class of 418 consumers is fair, reasonable, and adequate to compensate the proposed Settlement Class, and weighs in favor of preliminary approval.

### 7.    The Range of Reasonableness of The Settlement in Light of The Best Possible Recovery and In Light of All The Attendant Risks of Litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes

the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judgment will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972); *see also Wal-Mart Stores*, 396 F.3d at 119 (same). "This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir. 1995). However, "[t]he reasonableness of the Settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v JPMorgan Chase & Co.,* 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re "Agent Orange" Prod Liab. Litig.,* 597 F. Supp. 740, 762 (E.D.N.Y.1984)). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *Bodon v. Domino's Pizza, LLC*, 2015 WL 5886656, at *6 (E.D.N.Y. Jan. 16, 2015). Here, as articulated above, Class Counsel has obtained a recovery at a significant percentage of the class's maximum potential recovery, while removing all the attendant risks of litigation and uncertainties of trial and potential appeal. This factor strongly favors settlement.

## C.  The Settlement is Fair, Adequate and Reasonable Under The Rule 23(e)(2) Factors

The proposed Settlement Agreement should also be granted preliminary approval under Rule 23(e) factors. The terms of the Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.

### 1.   Class Counsel and Plaintiffs Adequately Represented the Class

Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may not approve a proposed class-action settlement without first making a finding that class counsel has adequately represented the class in connection with the settlement. *See* Fed. R. Civ. P. 23(e)(2)(A). "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 330 F.R.D. 11, 30 (E.D.N.Y. 2019); *Nnebe v. Daus*, 2025 U.S. Dist. LEXIS 87399, at *8 (S.D.N.Y. 2025).

First, the Court previously found that Mr. Espinal would adequately represent the NDNCR and ATDS Classes with respect to liability, [ECF 190], and there are no conflicts of interest between Mr. Espinal and members of the Settlement Class with respect to the proposed settlement. Mr. Espinal engaged in discovery, deposition, settlement conferences, and trial preparation, in order to achieve the best result for the NDNCR Class. Through his unyielding efforts, Mr. Espinal proceeded through class certification and summary judgment to achieve a class settlement, which provides significant relief to each Settlement Class member. Further, both Mr. Espinal and other Payment Class members now share an interest in obtaining an "immediate payment" from the Settlement Fund to compensate them for injuries that allegedly occurred nearly a decade ago. As such, Plaintiff Espinal is an adequate representative of the Class.

Second, Class Counsel has adequately represented the Classes. Class Counsel had a well-informed appreciation of the strengths and weaknesses of the Litigation while negotiating the Settlement Agreement. Class Counsel has prosecuted this case for five years to a favorable result. Counsel fought arduously, motion after motion, to achieve success for the class. Finally, Counsel

incurred $162,598.63 in costs in order for the case to proceed, on contingency, with significant risk of a lack of recovery. Accordingly, this factor weighs in favor of preliminary approval.

### 2. The Settlement Was Negotiated at Arm's-Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id;* s*ee also, D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a neutral "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Cavalieri v Gen. Elec. Co.,* 2009 WL 2426001, at *2 (N.D.N.Y. Aug. 6, 2009) (same).

The settlement reached in this case was negotiated at arm's length, as is easily demonstrated by the docket. This is not a case where the parties quickly made a class-wide settlement with limited scrutiny as to the case's merits, the discovery involved, or outside of Court oversight. Both Class Counsel and counsel for Defendant are experienced in class action litigation and this case has been litigated up until trial, with each side fighting for their respective positions throughout the entirety of the case. Nearly every motion imaginable in civil litigation was filed and fought over. Further, settlement was not reached between the parties alone. With the assistance and guidance of Court intervention, including rulings by the District Judge, six months of negotiations, and several court conferences before Magistrate Judge Cave was a final settlement agreement determined to be mutually acceptable to the parties. There is no dispute that the proposed Settlement Agreement satisfies this factor.

3.   <u>The Settlement Provides Adequate Relief to The Class</u>

a.   <u>The costs, risks, and delay of trial and appeal.</u>

This factor was analyzed under the *Grinnell* factor analysis above and weighs in favor of settlement.

b.   <u>The effectiveness of any proposed method of distributing relief to the class.</u>

The Payment Class includes all class members that received at least two text messages while registered on the national do-not-call registry. This is not a claim's made class. Each Payment Class member will receive a check unless he or she opts out. The check will be issued by a class administrator- one that has been agreed to between the parties following the receipt of quotes from various class administrators, which were obtained in order to find the most effective form of distribution. In this way, parties' Counsel has ensured that the maximum amount possible would be kept within the class fund. This factor favors approval.

c.   <u>The terms of any proposed award of attorney's fees, including timing of payment.</u>

The class Settlement Agreement consists of a common fund of $695,000. In common fund cases, courts may use either the lodestar method or the percentage method to compute attorneys' fees. *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 U.S. Dist. LEXIS 102805, at *40 (S.D.N.Y. June 8, 2022). The election is made by the District Judge, with eye towards preventing **<u>unwarranted</u>** windfalls to attorneys. *Id.*  Whichever method is chosen, for purposes of evaluating a request for attorney's fees, courts in the Second Circuit should be guided by the following non-exclusive factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

26

Plaintiff will address these factors here to demonstrate that the requested relief of attorney's fees is reasonable.

### i.    *Time and Labor Expended by Counsel*

While the work for the Litigation has not yet concluded, Counsel can represent the amount of time and labor done to date. The Litigation, which began in June 2020, has seen counsel spend 5 years in a hard fought, contentious litigation. As of the time of drafting this motion, Counsel has spent over a thousand hours prosecuting this claim. Over these five years, due to the contentious nature of the case, there has been significant motion practice throughout each year. The motion practice concerned, privileged communications, consolidation of related actions, motions to compel, motions for sanctions, motions for class certification, an appeal, a motion for summary judgment, motions for reconsideration, motions *in limine*, daubert motions, pretrial motions, and pretrial preparation. The case entailed depositions of 10 fact witnesses and four expert witnesses. It involved thousands of pages of discovery from Honda of Manhattan, Lexus of Manhattan, ZipWhip, BRAM, and CDK. The case also involved several hearings in front of the District Judge on matters ranging from deposition disputes to FTC subpoena disputes, damages disputes, and which questions of fact are for judge vs. the jury, etc. The Litigation also required approximately 5 settlement conferences before the Magistrate Judge to finalize a settlement, not only in principal, but down to the specific and nuanced terms and conditions. Finally, as the Litigation was settled close in time to trial, the case also required a modest portion of actual trial preparation.

There is no question that given the amount of time the parties have needed to present issues to Your Honor, the Court is clearly aware that the Litigation was as hard fought as civil litigation gets. The labor expended on this case was, frankly, exceptional.

*ii.      Magnitude and complexity of the litigation*

The magnitude and complexity of this litigation is reflected by the docket. The case was rife with legal issues at every turn. These issues included whether the subject text messages were solicitations, whether HOM customers provided consent, whether each class member signed the same consent forms, whether each class member had knowledge and/or expectation of the affiliated relationship between LOM and HOM, and whether HOM had permission as a matter of law to send the subject text messages, etc. Each factor of liability, affirmative defenses, and damages were contested, and remained contested until the settlement. This case was more akin to hiking Mount Everest, than taking a stroll in the park.

*iii.      Risk of the litigation*

Inherent in every case is a risk of zero recovery. Here, an inherent risk existed based on the fact that each class member signed a consent to be contacted form with HOM. A further risk existed from the fact that HOM and LOM have common ownership, which could have allowed the established business relationship exception defense to prevent liability. Liability aside, there was also significant risk in the form of the amount of damages permissible under the statutory provision. Many TCPA cases result in awards far less than $500 per text message. Therefore, whether the jury would have awarded anything near what the Settling Class members will receive, $250, presented *substantial* risk.

Notwithstanding the merits, Class Counsel took on significant risk to prosecute this case. Counsel spent five years litigating this case, instead of others, and, critically, expended over a hundred thousand dollars in out-of-pocket costs and expense, at risk of receiving zero compensation.

####     iv.     *Quality of representation*

The quality of the representation is also demonstrative from the progress of the case. Plaintiff prevailed in obtaining the necessary discovery, achieving class certification, surviving summary judgment, and defeating several motions for reconsideration. Finally, as the results in this case indicate, Class Counsel was able to leverage their expertise and experience to achieve a meaningful benefit for the Class.

####     v.     *Requested fee in relation to the settlement*

In relation to the settlement, the fee seeks 62% of the total settlement. At first glance, such a fee request may suggest that Class Counsel is receiving a windfall with such approval. This is not the case. As articulated above, Class Counsel fought hard on this case for five years. Only through their continued success, motion after motion, were they able to achieve a significant settlement for members of the NDNCR Class. This was not a case where Class Counsel was incentivized to run up fees; rather, Defendant remained strongly confident in its position and defenses rather than agree to any significant payout to class members until after the dispositive motions were decided by the Court. Not only this, but said success on summary judgment was not achieved until weeks before trial was initially scheduled. While conducting research of other similar class actions, the vast majority of TCPA class claims result in an early settlement well proceeding the state of litigation found in this case. Therefore, a similarly postured case could not be found to compare with.

Notably, Class Counsel does not seek a multiplier of the lodestar. In fact, by the time of the fee petition, Class Counsel anticipates seeking less than the total fees incurred. This is significant, because the standard in this Circuit is to award such a multiplier for contingency fee cases. *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096, at *21 (S.D.N.Y. June 30, 2017);

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014); *In re Platinum & Palladium Commodities Litig.*, No. IO-CV-3617, 2015 U.S. Dist. LEXIS 98691, 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."). The absolute objective, by both Plaintiff and Defendant is to obtain a payout of $250 per class member, regardless of the amount of the attorneys' fees or costs incurred.

Bearing these factors in mind, the requested fee, in relation to the settlement is acceptable. *See e.g. In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *70 (S.D.N.Y. June 8, 2022) (approving fees at 60% of the class); *Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548, at *25 (E.D.N.Y. Mar. 27, 2017)(higher percentages are generally allowed for relatively small total settlements); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 (LEK/CFH), 2014 U.S. Dist. LEXIS 174657, at *4 (N.D.N.Y. Dec. 18, 2014)(same, discussing $1.6 million settlement)

### vi.    *Public policy considerations*

Public policy favors a fees award. The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy. *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *67 (S.D.N.Y. June 8, 2022). Here, by providing compensation to injured class members, the litigation and settlement of Plaintiff's claims incentivizes retailers to take stronger consumer protection measures. *See, Id*. Class Counsel also undertook this case on a contingency basis with no guarantee that its time and expenses would be recovered. *See Id*.; *Blondell v. Bouton*, 2021 U.S. Dist. LEXIS 164292, at *11-12 (E.D.N.Y. Aug. 30, 2021)(Class Counsel's fees should reflect the

important public policy goal of providing lawyers with sufficient incentive to bring cases that serve the public interest). It would disincentivize attorneys to expend tens of thousands of dollars on case costs if the attorneys could not, at minimum, get their attorney's fees on a successfully settled case. Awarding Class Counsel less than their lodestar demonstrates that there is no risk of a windfall, which this factor must prevent.

Finally, all attorney's fees to be received will only be paid after the Class receives its payment pursuant to the Settlement Agreement, consistent with the true contingent nature of the case.

### d.   Any agreement required to be identified under Rule 23(e)(3).

*See* Exhibit 1, Settlement Agreement.

### 4.   The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 47. In the instant case, each NDNCR Class Member has the same claim. As a result, the Settlement Agreement distributes relief on a pro rata basis, which has been found by courts in this Circuit to be equitable. *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a pro rata distribution plan "appears to treat the class members equitably"). Thus, this factor favors approval as well.

## VI.   **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise'

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113. Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* (emphasis added).

Such notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* "There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice merely must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Charron v Pinnacle Group N.Y. LLC,* 874 F. Supp. 2d 179, 191 (S.D.N.Y 2012) (*quoting Wal-Mart Stores, Inc.,* 396 F.3d at 113-14), aff'd sub nom. *Charron v Wiener*, 731 F.3d 241 (2d Cir 2013). Here, the Parties' proposed notice plan includes direct mail and a dedicated Settlement Website. This comprehensive notice plan is intended to fully inform Class Members of the proposed Settlement, and the information they require to make informed decisions about their rights.

The proposed Class Notices contain "simple and straightforward language and not legalese" and "the notice program is robust and is likely to ensure that all members receive notice

of the claims and their rights with respect to the settlement." *Caddick v. Tasty Baking Co.,* 2021 WL 1374607, \*2 (E.D. Pa. 2021). Accordingly, this Court should approve the form of notices and the method of publication that Plaintiff proposes as they satisfy the due process requirements of Fed. R. Civ. P. 23.

Here, the robust proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure and will occur in the same manner as the initial Class Notice that was approved by this Court.

**VII.    CONCLUSION**

The proposed Settlement Agreement is fair, reasonable, and adequate. Thus, for all the reasons set forth above, preliminary approval should be, respectfully, granted and the Preliminary Approval Order entered so as to permit the Settling Parties to effectuate notice of the Settlement to the Settlement Class. At the hearing on final approval, Plaintiff anticipates a final judgment giving effect to the Settlement Agreement and dismissing the Settling Class claims with prejudice, and dismissal of all ATDS and NDNCR claims without prejudice of any purported Class members who have elected to be excluded from the Settlement Class and Settlement Agreement. Upon final approval and performance by Defendant of all of its obligations under the Settlement Agreement, Defendant will be fully, finally and completely released of all liability as to the Settlement Class within the terms of the Settlement Agreement. Accordingly, Plaintiff Jose Espinal respectfully requests that the Court, together with the LOM, to preliminarily approve the Settlement Agreement and set a date and time for the Final Approval Hearing.

Date:   July 22, 2025

**ZEMEL LAW, LLC**                                        **KAUFMAN DOLOWICH LLP**

*/s/ Daniel Zemel*                                          */s/ Jason M. Myers*
Daniel Zemel, Esq.                                          Jason M. Myers, Esq.

33

660 Broadway
Paterson, New Jersey 07514
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 283-8732
Jason.Myers@kaufmandolowich.com