UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRIAN WATSON et al., Plaintiffs, | : | 20 Civ. 4572 (LGS) |
| -against- | : | **OPINION & ORDER** |
| MANHATTAN LUXURY AUTOMOBILES, INC., Defendant. | : | |

LORNA G. SCHOFIELD, District Judge:

Lead Plaintiff Jose Espinal and Class Counsel Zemel Law LLC move for attorneys' fees, reimbursement of litigation expenses and a service award to Espinal in connection with a $710,300 class action settlement (the "Settlement," and when referring to the amount or the parties' agreement, the "Settlement Fund" or the "Settlement Agreement," respectively). The requested attorneys' fees and service award to Espinal are granted in full, and the requested litigation expenses are granted in part. A separate Order addresses the parties' motion for final approval of the Settlement.

## I. BACKGROUND

The following facts are taken from the parties' joint submissions in support of final approval unless otherwise noted.

### A. Procedural History

Plaintiffs commenced this action in June 2020. The operative Amended Consolidated Complaint (the "Complaint") asserts claims arising out of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and regulations promulgated thereunder. The claims arise out of text messages sent by Defendant Manhattan Luxury Automobiles (doing business as Lexus of Manhattan) to customers of Honda of Manhattan ("HOM").

In September 2022, two classes were certified. *See Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572, 2022 WL 4586407, at *11 (S.D.N.Y. Sep. 29, 2022). The Automatic Telephone Dialing System Class (the "ATDS Class") consists of "all HOM customers within the United States that were sent any text messages from Defendant, using the Zipwhip texting platform, stating 'Can I text you regarding maintenance of your Honda vehicle' or a similar variant thereof, to nonbusiness wireless telephone numbers within four years of the filing of this action." *Id.* The National Do-Not-Call Registry Class (the "NDNCR Class") consists of "all HOM customers within the United States that were sent two or more text messages from Defendant within a 12 month period, using the Zipwhip texting platform, stating 'Can I text you regarding maintenance of your Honda vehicle' or a similar variant thereof, to non-business wireless telephone numbers, whose telephone numbers were registered on the NDNCR more than thirty-two days before the first message was sent, within four years of the filing of this action." *Id.* Certification of a third putative class (the "IDNC Class") was denied for lack of Article III standing. *Id.* at *6.

In September 2024, Defendant's motion for summary judgment was granted in part and denied in part. *Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572, 2024 WL 4238307, at *1 (S.D.N.Y. Sep. 19), *reconsideration denied*, 2024 WL 4451714 (S.D.N.Y. Oct. 9, 2024). Summary judgment was granted to Defendant on the ATDS Class's claim and denied to Defendant on the NDNCR Class's claim. *Id.* at *2. The NDNCR Class's claim was then set for trial.

Meanwhile, the parties engaged in settlement negotiations with the assistance of Magistrate Judge Sarah L. Cave. Class Counsel simultaneously negotiated the Settlement and the proposed fee award. At the preliminary approval hearing, Class Counsel stated that, in negotiations with Defendant, the parties arrived at a total settlement amount of approximately

$700,000. After arriving at that number, Class Counsel began "drafting the paperwork" and "decided, of this amount, I'm going to seek this amount in fees and this amount for the class."

The parties advised that they had reached a settlement in principle on January 30, 2025 -- six days before the scheduled final pretrial conference and less than three weeks before trial was scheduled to begin on February 18, 2025. By that point, the docket sheet reflected nearly 400 filings, including fifteen motions in limine, proposed voir dire and jury instructions and pretrial memoranda of law. The parties finalized the Settlement in June 2025. The Settlement releases the claims of both the ATDS Class, whose claims were dismissed on summary judgment, and the NDNCR Class, whose claims were set for trial (the members of both Classes together, hereafter "Class Members").

On July 22, 2025, the parties moved for preliminary approval of the Settlement. On November 24, 2025, preliminary approval was granted. Notice of the Settlement and a fairness hearing was sent to all 418 NDNCR Class members and 3,993 ATDS Class members. On March 24, 2026, a fairness hearing was held. No Class Member objected to the Settlement, including the proposed fee award.

**B. The Settlement**

The Settlement Agreement limits the per capita recovery available to NDNCR Class members to $500 and reserves the remainder for attorneys' fees. Under the Settlement Agreement, any residual settlement amount not awarded as attorneys' fees or other allowable expenses may not be awarded to the NDNCR Class beyond this limit, but would go to a cy pres recipient.

The Settlement Fund totals $710,300. The Settlement Fund includes a $695,000 payment by Defendant in exchange for the release of Class Members' claims, plus $15,300 for Claims Administration, for which Defendant is responsible in addition to the $695,000 release payment.

Although an estimated claims administrator fee of $12,565 was preliminarily approved, $15,300 was the cost actually incurred by Defendant.

The Settlement Agreement requires that the "Individual Settlement Amount" payable to each of the 418 NDNCR Class members not exceed $500 per capita. The Settlement Agreement directs payment of the Individual Settlement Amount via check sent by First Class U.S. Mail within thirty days of final approval. Class Counsel's proposed distribution of the Settlement Fund sets the NDNCR Class recovery at $104,500. This originally was based on an Individual Settlement Amount of $250 per capita, but because only 376 NDNCR Class members are participating, the actual proposed payment per capita is approximately $277.92.[1] Additionally, as explained below, this Opinion excludes from reimbursable litigation costs $25,000 that Class Counsel paid as litigation sanctions and reallocates that amount to the NDNCR Class. This reallocation results in an additional approximately $66.49 payable to each participating NDNCR Class member, resulting in a proposed distribution of the Settlement Fund as follows:

| **Proposed Distribution ($344.41 Individual Settlement Amount)** | | |
|---|---|---|
| **Disbursement** | **Amount** | **Percentage of Fund (rounded to nearest 0.1%)** |
| Total Settlement | $710,300 | 100% |
| Claims Administrator's Fee, Costs and Expenses | $15,300 | 2.2% |
| Attorneys' Fees | $417,901 | 58.8% |
| Litigation Expenses and Costs | $137,599 | 19.4% |
| Lead Plaintiff Espinal's Service Award | $10,000 | 1.4% |
| NDNCR Class Recovery | $129,500 | 18.2% |

If, instead of the above proposal, the maximum Individual Settlement Amount allowable under the Settlement Agreement of $500 per capita were used (resulting in NDNCR Class

[1] Forty-two of the 418 notices sent to the NDNCR Class were unable to be delivered. At the fairness hearing, Class Counsel represented that the Individual Settlement Amount payable to these Class Members, or $10,500 (42 x $250), would be redistributed among the remaining 376 NDNCR Class members, i.e., $27.93 per NDNCR Class member.

recovery of $188,500, based on the 376 participating NDNCR Class members), with the difference deducted from Class Counsel's fee award, the allocation would be as follows:

| **Alternative Distribution ($500 Individual Settlement Amount)** | | |
|---|---|---|
| **Disbursement** | **Amount** | **Percentage of Fund (rounded to nearest 0.1%)** |
| Total Settlement | $710,300 | 100% |
| Claims Administrator's Fee, Costs and Expenses | $15,300 | 2.2% |
| Attorneys' Fees | $358,901 | 50.5% |
| Litigation Expenses and Costs | $137,599 | 19.4% |
| Lead Plaintiff Espinal's Service Award | $10,000 | 1.4% |
| NDNCR Class Recovery | $188,500 | 26.5% |

Thus, the maximum percentage of the Settlement Fund that the Agreement permits for the NDNCR Class is 26.5% of the Settlement Fund. Under the Settlement Agreement, if each NDNCR Class member were allocated the maximum amount of $500, any reduction in the proposed fee award and expense reimbursement would be payable to a cy pres recipient -- not to Class Members. Specifically, paragraph 62 of the Settlement Agreement states that "any residue of the Settlement Funds remaining for any reason, shall be used to create a *cy pres* fund."

## II. MOTION FOR ATTORNEYS' FEES

Class Counsel requests $417,901, or approximately 58.8% of the Settlement Fund, in attorneys' fees. This fee is "reasonable under the circumstances" and, for the reasons explained below, is approved. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[2]

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

**A. Legal Standard**

In Rule 23[3] class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee -- set by the court -- to be taken from the fund." *Id.* "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* "The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf." *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 70 (2d Cir. 2019). The reasonableness of a fee in this Circuit is evaluated by considering the *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50; *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723 (2d Cir. 2023).

"District courts [may] calculate fees [in common fund cases] using either the lodestar amount, which is the reasonable hourly rate multiplied by the hours reasonably expended, or a percentage of the fund." *Fikes*, 62 F.4th at 723. A court using the lodestar method may apply a "risk multiplier[]" to the lodestar to reward counsel for bearing the risk of non-payment -- that is, the fee award may be calculated by multiplying the lodestar amount by a factor greater than one. *Fresno Cnty.*, 925 F.3d at 68; *see Goldberger*, 209 F.3d at 47. A court using the percentage of the fund method may identify a percentage benchmark based on "other common fund settlements of a similar size, complexity and subject matter" and apply a lodestar cross-check to ensure that the percentage does not result in a windfall. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2018 WL 5839691, at *2 (S.D.N.Y. Nov. 8, 2018) (citing *In re Colgate-*

---

[3] Unless otherwise indicated, all references to "Rules" are to the Federal Rules of Civil Procedure.

*Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347-48 (S.D.N.Y. 2014)), *aff'd sub nom. Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019). While "the district court retains discretion to determine which methodology it will use to calculate class counsel's reasonable fee," *Fresno Cnty.*, 925 F.3d at 71, "[t]he *Goldberger* factors are applicable to the court's reasonableness determination" regardless of which method the court uses, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).

Also relevant is Rule 23(e)(2), which "directs courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118-19 (2d Cir. 2025); *see id.* at 121 (noting that Rule 23(h), which governs attorneys' fees, and Rule 23(e), which governs settlement approval, "may overlap"). "The symbiotic review of proposed relief and attorneys' fees aligns with the . . . goal of . . . prevent[ing] unwarranted windfalls for attorneys." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023).

The simultaneous negotiation of the class recovery and Class Counsel's fee award requires scrutiny of Class Counsel's fee application to ensure that Class Counsel has not "undervalue[d] the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly." *Kurtz*, 142 F.4th at 118. "Separate negotiation of the class settlement before an agreement on fees is generally preferable" because simultaneous negotiation "creates a potential conflict." Manual for Complex Litigation (Fourth) § 21.7 (2004); *see Malchman v. Davis*, 761 F.2d 893, 905 (2d Cir. 1985) ("This and other courts have previously expressed concern over the award of attorneys' fees in class action settlements."), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). However, "parties often negotiate [fees and class recovery] simultaneously, and defendants, who pay both fees and class

recovery, must be expected to think of the two payments in tandem as they negotiate." *Kurtz*, 142 F.4th at 120. For this reason, "class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'" *Id.*

In reviewing a class action settlement, the court may not "require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *accord Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010) (summary order) ("[T]he district judge generally should not dictate the terms of a settlement agreement in a class action."). Instead, the court must "approve or disapprove a proposed agreement as it is placed before" the court. *Mba*, 369 F.App'x at 197 (quoting *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 144 (2d Cir. 1987)). However, the court "may advise the parties what it would find reasonable and give them an opportunity to reach a new agreement." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 (2d Cir. 2020) (analogizing class action to FLSA settlement).

**B. Discussion**

The Settlement Agreement, as described above, limits class recovery with the remainder to go to Class Counsel. In light of that structure, the question is whether the requested fee is an appropriate allocation of the Settlement Fund between the NDNCR Class and Class Counsel -- i.e., whether the distribution (1) adequately compensates the NDNCR Class for its damages, (2) adequately compensates Class Counsel for its work and (3) reasonably allocates any shortfall from a full recovery between the NDNCR Class and Class Counsel. Because each of these three questions is answered in the affirmative, the fee request is "reasonable under the circumstances" in view of the *Goldberger* factors. *Goldberger*, 209 F.3d at 47. The Settlement provides NDNCR Class members a substantial but not full recovery for unwanted text messages given the statutory limitations. The Settlement awards Class Counsel a fee that is significantly discounted from the full lodestar value of its work, rather than the more typical premium. As explained

below, the shortfall to both the NDNCR Class and Class Counsel is fair, despite the fee being substantially more than NDNCR Class members' collective recovery.

**1. Percentage of the Fund & Lodestar Calculation**

Both the percentage of the fund and the lodestar are critical data points for the evaluation of Class Counsel's fee request. *See Fikes*, 62 F.4th at 723. In this case, each analysis points in a different direction.

Turning first to the percentage of the fund: Class Counsel seeks approximately 58.8% of the total Settlement Fund in attorneys' fees. This percentage is extremely high compared to reported statistics for funds of similar size.[4] One study reports that, for approximately forty-five class actions with recovery between $400,000 and $750,000 between 2009 and 2013, the mean fee percentage as a percentage of the total settlement fund was approximately 29%. Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 947-48 & fig. 5 (2017) ("Eisenberg, Miller & Germano 2017"). This study reports that, for fifty-two consumer class actions over the same period, the mean fee percentage was 26%, and the median was 25%. *Id.* at 952 tbl. 4. Another study reports that, for approximately sixty-nine class actions with recovery below $1.1 million between 1993 and 2009, the mean fee percentage as a percentage of the total settlement fund was 37.9%, and the median was 32.3%. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 264-65 & tbl. 7 (2010)

[4] The most recent data cited below is thirteen years old. More recent empirical data is available for certain industries or types of cases, but not across class actions of all types. *See, e.g.*, Laarni T. Bulan & Eric Tam, Cornerstone Rsch., *Securities Class Action Settlements: 2025 Review & Analysis* (2026), https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf [https://perma.cc/YF75-L9HY]; Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151, 1161 (2021) (reporting statistics for antitrust cases with corporate plaintiffs in pharmaceutical industry). More recent comprehensive data would be a welcome addition to the literature.

("Eisenberg & Miller 2010"). The requested value here -- approximately 58.8% of the Settlement Fund -- far exceeds these averages.

The lodestar value of Class Counsel's work paints the fee request in a different light. The lodestar value is $598,975, calculated as the "reasonable hourly rate multiplied by the hours reasonably expended." *Fikes*, 62 F.4th at 723. Two attorneys, each with more than ten years of legal experience -- Daniel Zemel and Elizabeth Apostola -- billed at a rate of $500 per hour for a total of 1197.95 hours. These rates are in line with rates approved for consumer protection litigation in this District. *See, e.g.*, *Lee v. Springer Nature Am., Inc.*, No. 24 Civ. 4493, 2025 WL 3523134, at *9 (S.D.N.Y. Dec. 9, 2025) (approving partner rates of $600 in data privacy class action and collecting cases). Class Counsel's time expenditure is reasonable given that the parties actively litigated this case for nearly five years and reached a settlement in principle five days before the scheduled final pretrial conference and less than three weeks before trial. Class Counsel's fee request of $417,901 is below the lodestar value of Class Counsel's work. Instead of applying a risk multiplier greater than 1.0, Class Counsel's fee request reflects a discounted risk multiplier of 0.7 -- i.e., a fee request that is 70% of the lodestar value.

The percentage of the fund and lodestar method suggest different conclusions. On the one hand, the requested fee percentage -- nearly 59% of the Settlement Fund -- far exceeds the amount typically awarded, compared both to the empirical data referenced above and a survey of caselaw in this District. *See Hart v. BHH, LLC*, No. 15 Civ. 4804, 2020 WL 5645984, at *10 (S.D.N.Y. Sep. 22, 2020) (declining to award fee "over 60% of the benefit provided to the class," "[e]ven given Class Counsel's efforts[ and] results"). On the other hand, a below-lodestar fee amount typically "strongly confirms the reasonableness of plaintiffs' fee request." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015).

**2. Fairness of Allocation**

Keeping in mind the percentage of the fund and the lodestar, the appropriate method to determine the reasonableness of Class Counsel's fee request is to compare the proposed allocation of the Settlement Fund to the Class against the proposed allocation to Class Counsel. This analysis, guided by the *Goldberger* factors, engages in a "symbiotic review of proposed relief and attorneys' fees . . . to prevent unwarranted windfalls for attorneys," *Moses*, 79 F.4th at 244, while compensating counsel for "counsel's assumption of risk on [the class's] behalf," *Fresno Cnty.*, 925 F.3d at 70. This analysis also reflects the reality that "class recovery and the agreement on attorneys' fees should be viewed as a 'package deal'" based on the total amount a defendant is willing to pay to resolve the litigation. *Kurtz*, 142 F.4th at 120. "A defendant's willingness to pay a high or low fee will be impacted by what it anticipates paying out to the class and vice versa." *Id.* The fee request is reasonable because it adequately compensates the NDNCR Class and Class Counsel, reasonably allocating any shortfall in recovery between the two.

**a. Fairness to Class**

Class Counsel's proposed allocation to the NDNCR Class represents a significant recovery for the class in light of the harm suffered. *See Goldberger*, 209 F.3d at 50 (directing courts to consider "the quality of representation" and "the requested fee in relation to the settlement"); *Hesse v. Godiva Chocolatier, Inc.*, No. 19 Civ. 972, 2022 WL 22895466, at *13 (S.D.N.Y. Apr. 20, 2022) ("The result achieved is a major factor to be considered in making a fee award . . . ."). This Opinion and the Final Approval Order docketed today allocate $129,500 to the NDNCR Class -- approximately $309.81 per NDNCR Class member, ultimately resulting in a $344.41 Individual Settlement Amount once funds are reallocated from non-participating NDNCR Class members.

The maximum statutory damages each NDNCR Class member could have recovered at trial was $500 per text message. *See Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572, 2025 WL 306591, at *2 (S.D.N.Y. Jan. 24, 2025); 47 U.S.C. § 277(c)(5)(B). The 418 members of the NDNCR Class received a total of 1,255 text messages -- an average of approximately three texts per NDNCR Class member. The maximum recovery at trial for the NDNCR Class as a whole would have been $627,500, or an average of approximately $1,500 per NDNCR Class member. The amount actually awarded could have been lower than the $500 maximum per text, as the TCPA entitles a plaintiff to "actual monetary loss" or "*up to* $500 in damages, whichever is greater." 47 U.S.C. § 227(c)(5)(B) (emphasis added). Any recovery could have been further reduced post-trial or on appeal. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 955 (8th Cir. 2019) (affirming district court's reduction of jury award from $500 per call to $10 per call). Additionally, trial could have resulted in no recovery, for example, because of a defense verdict, post-trial motion practice, the potential for class decertification or appellate risk. The $129,500 allocation to the NDNCR Class results in a class recovery over 20% of the maximum the class could have secured, absent trial or appellate risk or further delay in payment. Further, given the significant amount of attorney hours and litigation expenses required to prepare the case for trial, it is exceedingly unlikely that any NDNCR Class member would have pursued Defendant's alleged TCPA violations individually.

Class member recoveries in TCPA class actions are sometimes lower and sometimes higher than the Individual Settlement Amount here of approximately $344.41 (or the originally proposed Individual Settlement Amount of $250). *Compare, e.g.*, *Charvat v. Valente*, No. 12 Civ. 5746, 2019 WL 5576932, at *6, *13 (N.D. Ill. Oct. 28, 2019) (granting approval of TCPA class action providing $22.17 per claim and collecting cases approving settlements with average awards of $40 or less per claimant), *with* Plaintiffs' Unopposed Motion for Preliminary Approval

of Class Action Settlement, Dkt. No. 214, *Head v. Citibank, N.A.*, No. 18 Civ. 8189 (D. Ariz. July 31, 2024) (seeking preliminary approval for settlement resulting in $350 to $850 per class member), *and* Order, Dkt. No. 223, *Head*, No. 18 Civ. 8189 (D. Ariz. Jan. 15, 2025) (granting final approval). In addition, NDNCR Class members will receive the allotted Individual Settlement Amount via check sent by First Class U.S. Mail within thirty days of final approval, without requiring the filing of a claim. The proposed recovery allocated to the NDNCR Class results in immediate compensation for unwanted text messages, is significant in light of the harm suffered and is a reasonable allocation of the amount Defendant was willing to pay for a release.

**b. Fairness to Class Counsel**

The proposed attorneys' fee award also fairly compensates Class Counsel considering the work that Class Counsel performed and the risk of non-recovery or further delay in payment. *See Goldberger*, 209 F.3d at 50 (directing courts to consider "the time and labor expended by counsel," "the magnitude and complexities of the litigation" and "the risk of the litigation"). First, as discussed above, Class Counsel's below-lodestar request supports the reasonableness of the requested fee. Class Counsel does not seek a risk multiplier greater than 1.0, even though Class Counsel worked on behalf of the Class for nearly five years without interim compensation or reimbursement of litigation expenses. *See Fresno Cnty.*, 925 F.3d at 70. The allocation between Class Counsel and the NDNCR Class avoids "unjust[] enrich[ment] of persons who obtain the benefit of a lawsuit without contributing to its cost." *Id.* at 68. And as reflected by the significant class recovery, this is not a situation in which the fee award results in an "unwarranted windfall[] for attorneys" with little benefit to class members. *Moses*, 79 F.4th at 244; *see Kurtz*, 142 F.4th at 117 ("Absent class members can certainly stand to benefit from the class actions waged in their name, but they also are at risk of being unfairly treated as a result of the payout to others.").

To be clear, the proposed fee does not undercompensate Class Counsel either. First, Class Counsel secured payment only for the NDNCR Class, which has 418 members. Class Counsel also sought relief for the ATDS Class, which has 3,993 members who also could have recovered up to $500 per text message had their claims been successful. 47 U.S.C. § 227(c)(5)(B). Success on behalf of the ATDS Class -- which is nearly ten times the size of the NDNCR Class -- may have resulted in a larger common fund. Class Counsel also represented the IDNC Class, which was dismissed for lack of standing at class certification. *See Watson*, 2022 WL 4586407, at *6. Although Class Counsel shares in the benefits awarded to the NDNCR Class, Class Counsel's below-lodestar fee request represents the realized downside risk of nonpayment for the ATDS and IDNC Classes.

Second, empirical data reflects that the lodestar multiplier of approximately 0.7 is in line with, and slightly below, reported lodestar values for funds of a similar size. *See* Eisenberg, Miller & Germano 2017, *supra*, at 967 (mean lodestar multiplier of 0.72 and median of 0.74 for twenty-five class actions with recovery between $400,000 and $750,000 between 2009 and 2013); Eisenberg & Miller 2010, *supra*, at 274 (mean lodestar multiplier of 0.88 and median of 0.74 for class actions with recovery less than $1.1 million between 1993 and 2008). This comparator data reflects that, although smaller funds result in smaller fee awards, "it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." *Goldberger*, 209 F.3d at 52. To the contrary, in cases with relatively smaller recoveries (such as this one), it is typical for counsel to be required to accept a lower fee in light of the constraints imposed by the amount the defendant is willing to pay. *Kurtz*, 142 F.4th at 120.

Ultimately, in view of all of the *Goldberger* factors, and particularly considering the allocation of the Settlement Fund between the NDNCR Class and Class Counsel, Class Counsel's below-lodestar fee request of $417,901, or approximately 58.8% of the Settlement Fund, is

"reasonable under the circumstances" and is approved. *Goldberger*, 209 F.3d at 47. Being satisfied that Class Counsel's fee request is reasonable and that Class Counsel has "not sold out [the Class's] interests in settling the case," the Court's role is not to second-guess the parties or to fashion a different structure or allocation of the Settlement. *Kurtz*, 142 F.4th at 118; *cf. Fisher*, 948 F.3d at 602 (holding in FLSA context that court may not rewrite settlement agreement to reallocate funds between counsel and client).

## III. LITIGATION EXPENSES

Class Counsel seeks litigation expenses totaling $162,598.63. For the reasons below, this request is approved in part for a total of $137,598.63.

Rule 23(h) authorizes a court to award "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class, and should therefore be reimbursed for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation." *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060, 2022 WL 4554858, at *11 (S.D.N.Y. Sep. 29, 2022).

The bulk of the expenses sought by Class Counsel (for example, filing fees, expert fees and deposition transcripts) are approved as reasonably incurred and necessary to the representation. However, Class Counsel also seeks to recover $25,000 paid as sanctions to Defendant in connection with expert discovery in this case. This amount is not reimbursed to Class Counsel and is redistributed to the NDNCR Class.

On October 12, 2021, Judge Cave issued an Order (the "Sanctions Order") finding that a supplemental and rebuttal report served by Class Counsel (the "S&R Report") "was an improper rebuttal or supplemental report." Judge Cave ordered that Defendant be allowed to re-depose

Plaintiffs' expert and to serve responsive reports from Defendant's experts, "with the reasonable associated costs to be paid by Plaintiffs." The parties stipulated that Plaintiffs pay $25,000 "in order to fully reimburse Defendant for the costs associated with the deposition and reports."

Class Counsel contends that this sanctions payment is properly recoverable because the S&R Report was "critical to the Class in obtaining the results" achieved. Class Counsel explains that it served the S&R Report to address "a programming error" and "specific flaws" in Plaintiffs' expert's analysis, which Defendant's experts raised in their reports. Without correcting these flaws, Class Counsel argues, Plaintiffs' expert's "methodology could have been found wanting leading to the denial of class certification." Class Counsel further argues that, "if counsel had discovered the error internally and spent $25,000 on an expert to fix it *before* Defendant's expert highlight[ed] the error and other flaws, that would be a standard, reimbursable cost."

These arguments are unavailing. The NDNCR Class should not be required to pay Defendant's legal and expert fees incurred in connection with expert discovery. Although service of the S&R Report may have been justifiable at the time and ultimately necessary to secure class certification, the NDNCR Class should not be penalized because Defendant, instead of Class Counsel, ultimately discovered the errors in Plaintiffs' expert analysis.

Class Counsel also seeks (and is awarded) fees and litigation expenses that Class Counsel incurred in connection with the S&R Report and the re-deposition of Plaintiffs' expert. This amount is awarded because it would be inequitable to penalize Class Counsel twice for the Sanctions Order.

Excluding the $25,000 sanctions payment, Class Counsel is awarded litigation expenses in the amount of $137,598.63. The $25,000 sanctions payment is redistributed to the NDNCR Class, which results in NDNCR Class recovery of $129,500.

## IV. SERVICE AWARD

Courts are permitted to grant "fair and appropriate" service awards to class representatives. *Moses*, 79 F.4th at 253. District courts in this Circuit often address the following factors in determining the appropriateness of a service award:

> [1] the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, [2] the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), [3] any other burdens sustained by that plaintiff . . . and, of course, [4] the ultimate recovery.

*Fikes*, 62 F.4th at 721 (2d Cir. 2023).

The requested $10,000 service award to Lead Plaintiff Espinal is granted. Espinal submitted an affidavit detailing the work he performed on behalf of the Class over five years, including responding to discovery requests, sitting for a deposition and assisting Class Counsel in settlement negotiations. The requested service award is also consistent with other service awards awarded in this District. *See, e.g.*, *Kohari v. MetLife Grp., Inc.*, No. 21 Civ. 6146, 2025 WL 100898, at *12 (S.D.N.Y. Jan. 15, 2025) ($15,000 to each lead plaintiff); *In re XL Fleet Corp. Sec. Litig.*, No. 21 Civ. 2002, 2024 WL 1884483, at *2 (S.D.N.Y. Apr. 30, 2024) ($25,000 to lead plaintiff and $15,000 to each named plaintiff).

## V. CONCLUSION

For the reasons above, Class Counsel's motion for attorneys' fees and litigation costs is **GRANTED in part** as follows: Class Counsel is awarded $417,901 in attorneys' fees and $137,598.63 in litigation costs. One-half of the attorneys' fees are payable upon entry of this Order, with the remaining half payable upon order of the Court after distributions to NDNCR Class members are complete. Litigation costs are payable immediately on entry of this Order. The motion for a $10,000 service award for Lead Plaintiff Espinal is **GRANTED**.

The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 414, 418 and 419.

Dated: August 6, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE